SOUTHERN SURETY COMPANY OF NEW YORK V. PAULA
SCHEEL ET AL.

No. 6300.   Decided January 30, 1935.
Rehearing overruled February 27, 1935.
(78 S. W., 2d Series, 173.)

*Vinson, Elkins, Sweeton & Weems,* of Houston, for plaintiff in error.

Deceased being an independent contractor, the court should have given an instructed verdict for plaintiff in error.   McKinney v. Sherwin-Williams, 271 S. W., 133; Southern Surety Co. v. Shoemaker, (Com. App.) 24 S. W. (2d) 7; Planters Cotton Oil Co. v. Wood, 25 S. W. (2d) 188.

*Hull & Oliver,* of San Antonio, for defendants in error.

Deceased was not an independent contractor.   Haynes v. Taylor, (Com. App.) 35 S. W. (2d) 104; Dr. Pepper Bottling Co. v. Rainboldt, 40 S. W. (2d) 827.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

On April 30, 1931, the Southern Surety Company of New York, brought this suit in the district court of Goliad County against the defendants in error, the widow and minor children of H. W. Scheel, deceased, to set aside an award of the Industrial Accident Board for the death of Scheel. The case was tried to a jury, on special issues, resulting in verdict and judgment for the defendants in error. The Court of Civil Appeals affirmed said judgment. 49 S. W. (2d) 937.

The surety company was the insurer, under the Workmen's Compensation Law, of the employees of the Three Rivers Glass Company, a corporation, whose place of business was at Three Rivers, Texas. The latter company was engaged in the business of manufacturing bottles, and similar products, for sale and distribution in Texas, Louisiana and other states. The deceased, H. W. Scheel, was killed in an automobile accident, which occurred in Goliad County on January 1, 1931. At the time of the accident, Scheel was hauling, in his motor truck, a load of bottles which had been consigned by the Glass Company to one of its customers in the State of Louisiana. The controlling question in the case is whether or not Scheel's relation to the Glass Company at the time, was that of an independent contractor. With reference to this question, the material facts are undisputed. They are substantially as follows:

Formerly the Glass Company shipped their products to their various customers, by rail. Later, the company decided to have its shipments handled by operators of motor trucks. In pursuance of this plan, the company arranged with H. W. Scheel, and a number of other truckmen, to haul the freight. Under the arrangement, each truckman was to be paid, for the hauling, at a rate corresponding to railroad car-load rates. Each truckman was to provide himself, at his own expense, with a truck. The freight was to be hauled by him or his servants, and he was to bear all expenses incident to operating his truck, and control its operation. The Glass Company, through its servants, was to load the goods in the trucks, in the order in which the trucks were presented for loading at the company's plant,—in each instance the truckman, or his driver, being the judge of the size of the load he wanted to haul. For each load, the truckman, or his driver, was to sign, in duplicate, a bill of lading, similar to those used by railroad

companies. One of these he was to give to the Glass Company at the time, and the other he retained. He was to haul the goods to destination and there deliver same to the consignee. The truckman was to have the consignee sign receipt for the goods, on the duplicate bill of lading retained by the truckman, and the latter was to return same to the Glass Company. The truck was to be unloaded, at destination, by the consignee. None of the truckmen had a permit from the State Railroad Commission to operate his truck as a carrier, and none of them was expected to do any hauling for hire, except for the Glass Company. The company imposed no restriction in this last mentioned respect, but each truckman was free to follow his own will; and, as a matter of fact, some of them, including H. W. Scheel, did haul freight for others, for hire. The company, through its foreman instructed the truckmen to be courteous to the company's customers to whom freight was delivered. The company also required each truckman to take out public liability insurance and cargo insurance. In addition to the privilege of hauling consignments of freight, as hereinabove explained, each truckman had the privilege to haul back, on his return trip, any goods previously shipped which customers rejected. For this return haul, he was to receive pay at the same rate as in other cases. The foreman of the company would notify him of this rejected freight and of its location.

H. W. Scheel, for several months prior to his death, hauled freight for the company, under and in conformity to the arrangements stated above, and was so engaged at the time he was killed. As said, he was accidentally killed, in Goliad County, while engaged in hauling a shipment of bottles to a point in Louisiana. In our opinion, the facts show, as a matter of law, that Scheel was not an employee of the Glass Company, within the meaning of the Workmen's Compensation Law, but was an independent contractor. Security Union Ins. Co. v. McLeod, 36 S. W. (2d) 449, and cases there cited. The judgment of the trial court and that of the Court of Civil Appeals affirming same are reversed, and judgment is here rendered in favor of the plaintiffs in error.

Opinion adopted by Supreme Court January 30, 1935.