**EAGLE TRUCKING COMPANY et al., Appellants,**

**v.**

**TEXAS BITULITHIC COMPANY et al., Appellees,**

**and**

**Johnnie Wesley GUIN et al., Appellants,**

**v.**

**EAGLE TRUCKING COMPANY et al., Appellees.**

**Nos. 1215, 1215–A.**

Court of Civil Appeals of Texas, Tyler.

Nov. 1, 1979.

Rehearing Denied Nov. 29, 1979.

Blake C. Erskine, Kenley, Boyland, Cogh-
lan & Erskine, Longview, Blake Bailey,
Wellborn, Houston, Bailey & Perry, Hen-
derson, for appellants.

Melvin R. Wilcox, III, Otto A. Ritter,
Roberts, Harbour, Smith, Harris, French &
Ritter, Longview, Michael A. Hatchell, Ra-
mey, Flock, Hutchins, Jeffus, McClendon &
Crawford, Tyler, for appellees.

McKAY, Justice.

These are two separate appeals from a single judgment of the district court in Gregg County. One appeal was taken to the Court of Civil Appeals for the Sixth Supreme Judicial District and one to this Court; they were consolidated in this Court by the Supreme Court.

The case arose from a collision between two trucks on Farm-to-Market Road 2011 south of Longview, Texas. A dump truck driven by Johnnie Wesley Guin, travelling north, rounded a curve and struck a winch truck which was standing on the highway surface a few yards south of a bridge. The winch truck was standing across the highway, perpendicular to the long axis of the road, and at least partially blocking both lanes of traffic. The winch truck was being used to pull a water pump from an area near the creek over which the bridge crossed, the pump having been used in the drilling of a nearby oil well. Guin and Robert G. Fitch, operator of the winch truck, suffered serious physical injuries and there was damage to both trucks.

In addition to Guin and Fitch the parties in the trial court were as follows: Billy Wayne Peden, who was the owner of the

dump truck; Norman Gamel and Clyde Grantham, doing business as the partnership G & G Construction Company, who had engaged the services of Guin and of Peden's truck for the purpose of hauling sand; Texas Bitulithic Company which owned and operated "hot mix" plants in Longview and Kilgore where the sand was being hauled; Eagle Trucking Company which was engaged in oil field operations and owned the winch truck; United Drilling Company which had been engaged in drilling the nearby oil well and owned the water pump which was being pulled from the creek bed by Eagle's truck; and finally, Protective Insurance Company which was the worker's compensation carrier for Eagle Trucking and had paid benefits to Fitch.

The facts of the case are basically simple. Texas Bitulithic contracted with G & G Construction to have sand hauled to the former by the latter. G & G Construction had two trucks of its own for such hauling and, on occasion, used trucks owned by others, such as Peden's. Peden was an assistant manager for Texas Bitulithic and also operated his dump truck. Guin drove the truck for Peden. Guin, on the morning of the accident, February 23, 1976, picked up a load of sand at the Minor Sand Pit and began travelling north on FM 2011 toward the Texas Bitulithic plant in Longview. He drove around a righthand curve and came down a slight incline toward the Gamble Creek bridge where the winch truck was standing crosswise of the highway. There were four employees of United at the scene, one of which was stationed south of the bridge as a "flagman." It was disputed exactly how far south of the bridge that he was located when Guin approached. The "flagman," who had no flag or other warning device other than his gloves and perhaps his hard hat, attempted to stop the dump truck by waiving his arms. Guin, who claims he was distracted by the "flagman" and did not know what the man wanted, drove past him and collided with the winch truck. From Guin's direction of travel, the bridge area and the winch truck would have been visible from at least 631 feet.

The dump truck, fully loaded, weighed approximately 20 tons. The winch truck, described as a "15-ton truck," weighed approximately 11 tons, and had the 5-ton water pump sitting on its tailboard when it was struck. It is disputed whether Guin applied his brakes prior to the collision and the speed at which he was travelling at the time of the impact is also disputed. The force of the collision carried the winch truck a distance of 78 feet onto the bridge and threw Fitch from the truck, causing him to land below the bridge.

It had rained for several days prior, but the day of the accident was clear and dry. The rain, however, had softened the ground so that Fitch and his supervisor at the scene felt that they could not maneuver the truck off the road surface. The winch truck was at first parked parallel to the road and its winch was used to pull the water pump part of the way to the truck. Fitch then maneuvered the truck into a position perpendicular to the road, having to back it up and go forward several times in order to position it on the narrow road. He then utilized the winch to pull the water pump up to the truck and onto its tailboard. It was shortly after he got the pump onto the tailboard that the collision occurred. There was testimony that he could not have continued to pull the pump up to the truck while the truck was positioned parallel to the road because of the angle of the incline up which it would have to have been pulled, which would probably have caused the pump to turn over.

Guin sued Eagle Trucking, Fitch, and United Drilling for personal injuries, loss of earnings and earning capacity, and hospital and medical expenses, alleging damages totalling $75,000 and several acts or omissions of negligence by the defendants, i. e., blocking the highway, failing to keep a proper lookout, failing to have a flagman warn oncoming traffic, and failing to place flares or warning signs on both sides of the winch truck.

Fitch counterclaimed for his injuries against Guin, Peden, Gamel and Grantham

d/b/a G & G Construction, Texas Bitulithic, and United Drilling, alleging negligence on the part of Guin in failing to keep a proper lookout, speeding, failing to yield right-of-way, and failing to timely apply his brakes; his damages were alleged to be $250,000. Fitch alleged that he notified employees of United Drilling that flagmen should be placed in both directions to warn traffic. Protective Insurance Company, as worker's compensation insurance carrier, claimed subrogation rights to $18,111.30 of any recovery by Fitch.

Eagle Trucking filed its counterclaim against Guin, Peden, G & G, Texas Bitulith-ic and United Drilling for $9,500 in damages to its winch truck plus loss of use and total damages in the amount of "no less than $30,000."

United Drilling brought a cross-action against Guin, Peden, G & G, and Texas Bitulithic for indemnity and contribution.

All counter-defendants filed answers to the respective counterclaims against them. The case came to trial before a jury, which made its findings in favor of the winch truck parties. The special issues and the jury's responses thereto are set forth in the footnote.[1]

1. QUESTION NO. 1

On the occasion in question was EAGLE TRUCKING CO. negligent: (a) in blocking the lane of traffic along which JOHNNIE GUINN [sic—Guin's name is misspelled throughout] was traveling (b) in failing to keep a proper lookout (c) in failing to see that some individual with red flags was posted south of the bridge before he [sic] began loading the pump (d) in failing to post warning devices south of the bridge (e) in creating a hazardous condition.

Answer "YES" or "NO" in each line of Column 1. If any of your answers in Column 1 are "YES", was any such negligence a proximate cause of the occurrence in question? Answer "YES" or "NO" on the corresponding line of Column 2.

| | COLUMN 1<br>Negligence | COLUMN 2<br>Proximate Cause |
|---|---|---|
| (a) In blocking lane of traffic | "NO" | |
| (b) Failing to keep proper lookout | "NO" | |
| (c) Failing to post individual with red flags | "NO" | |
| (d) Failing to post warning devices | "NO" | |
| (e) In creating a hazardous condition | "NO" | |

QUESTION NO. 2

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate JOHNNIE GUINN for his injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

Do not include any amount for any condition not resulting from the injuries, if any, which resulted from the occurrence in question.

You may consider the following elements of damage, if any, and none other:
(a) Physical pain and mental anguish in the past.
(b) Physical pain and mental anguish which, in reasonable probability, he will suffer in the future.
(c) Loss of earnings in the past.
Answer in dollars and cents, if any.
ANSWER: "NONE"

QUESTION NO. 3

Find from a preponderance of the evidence the reasonable expenses, if any, for necessary medical and hospital care received by JOHNNIE GUINN in the past for treatment of his injuries resulting from the occurrence in question.
Answer in dollars and cents, if any.
ANSWER: "$1,640.25"

"MARKET VALUE" means the amount which would be paid in cash by a willing buyer who desires to buy; [sic] but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.

QUESTION NO. 4

Find from a preponderance of the evidence the market value in Gregg County, Texas, of the truck driven by JOHNNIE GUINN immediately before the occurrence in question.
Answer in dollars and cents, if any:
ANSWER: "$8,500.00

QUESTION NO. 5

Find from a preponderance of the evidence the market value in Gregg County, Texas, of such vehicle immediately after the occurrence in question.
Answer in dollars and cents, if any.
ANSWER: "$1,500.00"

QUESTION NO. 6

On the occasion in question, was Johnnie Wesley Guinn negligent in failing to keep a proper look-out, failing to operate his vehicle at a rate of speed a person of ordinary prudence would have operated, failing to make timely and proper application of his brakes, or failing to turn his vehicle to the right?

Answer "yes" or "no" in each line in Column 1. If any of your answers in Column 1 are "yes", was any such negligence a proximate cause of the collision in question? Answer

The judgment of the trial court was that: (1) motions for instructed verdict by Texas Bitulithic, G & G Construction, and United Drilling be granted; thus (a) Fitch, Eagle Trucking, and Protective Insurance take nothing against said movants, (b) Guin and Peden take nothing against United Drilling, and (c) United Drilling take nothing on its cross-action for indemnity and contribution; (2) Guin and Peden take nothing against Fitch and Eagle Trucking; (3) Fitch recover from Guin and Peden, jointly and severally, $216,232.35 (and Protective Insurance recover $18,111.30 from that sum); and (4) Eagle Trucking recover from Guin and Peden, jointly and severally, $47,000.00.

Answer "yes" or "no" in the corresponding line of Column 2.

|   |   | COLUMN 1 NEGLIGENCE | COLUMN 2 PROXIMATE CAUSE |
|---|---|---|---|
| A. | Proper look-out | "YES" | "YES" |
| B. | Control of speed | "YES" | "YES" |
| C. | Brakes | "YES" | "YES" |
| D. | Failure to turn | "NO" | |

QUESTION NO. 7

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Robert Fitch for his injuries, if any, which resulted from the occurrence in question?

Consider the following elements of damage, if any, and none other:

A. Physical pain and mental anguish in the past.

B. Physical pain and mental anguish which in reasonable probability he will suffer in the future.

C. Loss of earnings in the past.

D. Physical impairment in the past.

E. Physical impairment in the future.

Answer in dollars and cents, if any.

ANSWER: "$200,000.00"

QUESTION NO. 8

What sum of money, if any, do you find from a preponderance of the evidence will fairly and reasonably compensate Robert Fitch for reasonable hospital and medical expenses incurred by him in the past in the necessary treatment of his injuries sustained in the accident in question?

Answer in dollars and cents, if any.

ANSWER: "$1,232.35"

QUESTION NO. 9

What sum of money, if any, do you find from a preponderance of the evidence would fairly and reasonably compensate Robert Fitch for reasonable medical and hospital expenses which you find he will in reasonable probability incur in the future in the necessary treatment of his injuries sustained in the accident in question?

Answer in dollars and cents, if any.

ANSWER: "$15,000.00"

QUESTION NO. 10

What do you find from a preponderance of the evidence to be the reasonable market value in Gregg County, Texas, of the 1975 International Tractor with equipment operated by Robert Fitch immediately before the occurrence in question?

Answer in dollars and cents.

ANSWER: "$43,000.00"

"Market value" means the amount which would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.

QUESTION NO. 11

What do you find from a preponderance of the evidence to be the reasonable market value in Gregg County, Texas, of the 1975 International Tractor with equipment operated by Robert Fitch immediately after the occurrence in question?

Answer in dollars and cents.

ANSWER: "$10,000.00"

QUESTION NO. 12

What do you find from a preponderance of the evidence to be the reasonable value of the use of a truck and equipment of the same type as that operated by Robert Fitch on the occasion in question for a period of time reasonably required to replace said truck and equipment?

Answer in dollars and cents.

ANSWER: "$14,000.00"

QUESTION NO. 13

If any of your answers in Column 2 of Question 1 are "YES", and if any of your answers in Column 2 of Question 6 are also "YES", then answer this Question 13; otherwise, do not answer this question.

What percentage of the negligence that caused the occurrence do you find from a preponderance of the evidence to be attributable to each of the parties found by you to have been negligent?

The percentage of negligence attributable to a party is not necessarily measured by the number of acts or omissions found.

In answering this question, you should consider the negligence of EAGLE TRUCKING CO. and JOHNNIE GUINN which you have found to be a proximate cause of the occurrence; therefore, the percentages should add up to 100%.

Answer by stating the percentage opposite each name.

EAGLE TRUCKING CO. [not answered] %
JOHNNIE GUINN [not answered] %

In No. 1215, Fitch, Eagle Trucking, and Protective Insurance appeal from the trial court's granting of Texas Bitulithic's and G & G Construction's motions for instructed verdict. In No. 1215–A, Guin and Peden appeal from the adverse judgment making them liable for damages to Fitch and Eagle Trucking.

### NO. 1215–A

In their first point of error, Guin and Peden urge that the trial court incorrectly overruled their motion for new trial because Fitch and Eagle Trucking were negligent as a matter of law. Guin and Peden contend that the evidence shows a violation of Article 6701d, sec. 93(a),[2] by the positioning of the winch truck across the highway, leaving no unobstructed width of roadway for the passage of other vehicles. That statute provides:

"Sec. 93(a) Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park, or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred (200) feet in each direction upon such highway."

Fitch and Eagle Trucking assert that Guin and Peden failed to plead a violation of the quoted statute, the first mention thereof being made in the motion for new trial. In Guin's first amended original petition, however, he alleged that as he approached the area at which the accident occurred, he saw Eagle's truck "completely blocking FM 2011," and that he was unable to halt his vehicle "in time to avoid a collision with [the winch] truck that had FM 2011 completely blocked." He also asserted as an act of negligence the "stopping and/or parking [of] the [winch] truck com-

pletely across the paved or main-traveled part of FM 2011." Peden, in his original counterclaim, alleged a violation of Article 6701d in that Eagle, United, and Fitch "created a dangerous and perilous situation on FM Road 2011," and alleged that they "failed to comply with . . . Art. 6701d." In their first supplemental answer to Peden's counterclaim, Fitch and Eagle Trucking specially excepted to these allegations as being general, global, and vague and as constituting mere conclusions. Although there is no indication in the record of the trial court's action on such special exceptions, Peden filed another counterclaim (not denominated as an "amended" counterclaim) in which he omitted the references to Article 6701d except that he alleged a violation of section 138 of that statute. Peden, in the later counterclaim, alleged factually that the winch truck was "completely blocking said road." No special exceptions to Peden's counterclaim were addressed to the failure to indicate statutory violations relied upon, and no special exceptions at all were made to Guin's petition. Thus, in the pleadings on which Guin and Peden went to trial, neither expressly named section 93(a) of Article 6701d or alleged that the facts alleged constituted a statutory violation.

Pleadings are sufficient if they give fair and adequate notice to the pleader's adversary. *Stone v. Lawyers Title Insurance Corp.,* 554 S.W.2d 183, 186 (Tex. 1977); Rule 45, T.R.C.P. It has been further held that a pleading is sufficient if its language gives the adversary either notice as to what issues are on trial, *McCane Sondock Detective Agency v. Penland Distributors, Inc.,* 523 S.W.2d 62, 65 (Tex.Civ.App.— Houston [14th Dist.] 1975, no writ), or notice of the proof which will be introduced against him at trial. *Osteen v. Crumpton,* 519 S.W.2d 263, 265 (Tex.Civ.App.—Dallas 1975, writ ref'd). "The test should be whether an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and the basic is-

---

2. All references are to Texas Revised Civil Statutes Annotated.

sues of the controversy and the testimony probably relevant." 2 McDonald, Texas Civil Practice sec. 5.05 at pp. 15–16 (1970). We are of the opinion that the pleadings of Guin and Peden would put an opposing attorney of reasonable competence on notice that they intended to rely upon the blocking of the highway as a statutory violation.

Furthermore, the general rule is that although a pleading does not invoke the law that is deemed to be applicable to the case, the court will notice and apply the proper rule. 45 Tex.Jur.2d Pleading sec. 24 at pp. 403–4 (1963); see *Ryan v. State,* 32 Tex. 280, 281 (1869). Indeed, it has been held that a plaintiff's pleading that his case fell within a particular subdivision of a statute was a mere conclusion, *American Asphalt Co. v. O'Rear,* 36 S.W.2d 779, 780 (Tex.Civ.App.—El Paso 1931, no writ); and where the statutes allegedly violated were named, but without indicating the facts comprising a violation thereof, the allegations were held to be mere conclusions. *Thomason v. Ulmer,* 274 S.W.2d 103, 104 (Tex.Civ.App.—Fort Worth 1954, no writ).

"It is usually sufficient in automobile cases to allege the particular conduct relied on as constituting a ground for recovery, without reference to statutory provisions claimed to have been violated by such conduct . . . . .

. . . . .

" . . . [I]t is ordinarily sufficient to set out the facts from which the court can see that a statutory duty has been violated, and allegations sufficiently showing negligent conduct may be deemed sufficient to allege the violation of a statute . . . ." 13 Blashfield, Automobile Law and Practice, sec. 457.19 at pp. 385, 389 (1969).

In 61 C.J.S. Motor Vehicles § 505(2) (1970), we find the following at pp. 323–5:

"The violation of a statute or ordinance may be charged by an express allegation thereof, *by setting out the facts showing violation of the statute or ordinance under consideration,* by alleging that the automobile was being operated unlawful-

ly, *or by making allegations of negligence broad enough to include a violation of a statute or ordinance . . . ."* [Emphasis added.]

In *O. K. Theater Corp. v. Rehmeyer,* 115 S.W.2d 985 (Tex.Civ.App.—El Paso 1938, writ dism'd), the court held that an allegation by the plaintiff that "the said agents of the defendant turned their automobile suddenly to the left and across said highway . . . without giving plaintiff any chance to avoid striking the said automobile . . . ." properly stated a cause of action for violation of the then Article 801, Texas Revised Penal Statutes, although the statute itself was not mentioned in the pleading and the acts alleged were not said to constitute a statutory violation. *Id.* at p. 987. See also *Phoenix Refining Co., Inc. v. Walker,* 108 S.W.2d 323, 325 (Tex.Civ.App.—Beaumont 1937, writ dism'd); *Hines v. Foreman,* 243 S.W. 479, 484 (Tex.Com.App. 1922, holding approved); *Fender v. Farr,* 262 S.W.2d 539, 543 (Tex.Civ.App.—Texarkana 1953, no writ); *Dorman v. Cook,* 262 S.W.2d 744, 747 (Tex.Civ.App.—Beaumont 1953, writ dism'd). In *Belzung v. Owl Taxi,* 70 S.W.2d 288, 290 (Tex.Civ.App.—Eastland 1934, writ dism'd), it was held that the plaintiff failed to plead the statute the violation of which he relied upon and thus failed to properly allege a case of negligence per se. The decision, however, is couched in terms of the plaintiff's failure to plead "*facts* showing negligence per se" and failure "to allege the *statutory prerequisites."* [Emphasis added.] The same situation obtained in *Mercer v. Evans,* 173 S.W.2d 206, 209 (Tex.Civ.App.—Fort Worth 1943, writ ref'd), and *Wright v. McCoy,* 110 S.W.2d 223, 227 (Tex.Civ.App.—Eastland 1937, no writ). Thus, the requirement is that one plead the *facts* constituting a statutory violation.

In the instant case, there is no dispute that, and judicial notice may be taken of the fact that, the location of the accident is "outside of a business or residence district." Both Guin and Peden alleged that the winch truck "completely blocked" the highway. Accordingly, we are of the opin-

ion, construing Guin's and Peden's pleadings liberally as we are required to do, *Gulf, Colorado & Santa Fe Railway Co. v. Bliss,* 368 S.W.2d 594, 599 (Tex.1963), that they have adequately pled the facts constituting a violation of Article 6701d, section 93(a).

In order to establish negligence per se, there must (1) be a violation of a legislative enactment, (2) which is unexcused. *Missouri Pacific Railroad Co. v. American Statesman,* 552 S.W.2d 99, 102 (Tex.1977). To discuss the second of these first, our Supreme Court has set forth rules for determining when an excuse exists in *Impson v. Structural Metals, Inc.,* 487 S.W.2d 694 (Tex.1972), its progenitors, and its progeny. See also 5 St. Mary's Law Journal 552 (1973). In that case, the court approved the general treatment of legally acceptable excuses for statutory violations contained in Section 288A of the Restatement (Second) of Torts (1965). That section provides, "*Unless the enactment or regulation is construed not to permit such excuse,* its violation is excused when . . . " [there follows a list of five categories of acceptable excuses]. [Emphasis added.] Here, Article 6701d, section 93(a), provides in part, "*but in every event* an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles . . . ." [Emphasis added.] The plain language of the statute admits of no excuse for its violation. We therefore construe Article 6701d, section 93(a), not to permit excuses for its violation.

Now we come to the first of the requirements for negligence per se, i. e., a violation of a legislative enactment. It is generally true that, when either party in a case involving a traffic accident seeks to rely upon a statutory violation of the other as primary or contributory negligence per se, the party so relying has the burden to prove the statutory violation and get a finding thereof. *Antee v. Sims,* 494 S.W.2d 215, 217 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n. r. e.). This does not obtain, however, where it has been established that the conduct constituting negligence per se undisputedly occurred. It is unnecessary for the trial court to submit an issue on an undisputed fact. *Sullivan v. Barnett,* 471 S.W.2d 39, 44 (Tex.1971); *James v. Haupt,* 573 S.W.2d 285, 288 (Tex. Civ.App.—Tyler 1978, writ ref'd n. r. e.).

The testimony of all the witnesses who testified concerning the facts of the statutory violation was to the effect that either the witness did not know whether the winch truck blocked the highway so that there was not room for the free passage of traffic, or positively that the truck did so block the highway. Guin testified that the winch truck was "blocking both lanes of traffic." Robert J. Pennington, an employee of Eagle Trucking and Fitch's supervisor at the time of the accident, testified that he did not remember whether the winch truck "went all the way across the road," but that "it did cross the center line." Raymond Pugh, an employee of United Drilling and the "flagman" stationed to the north of the site of the accident, stated in his testimony that the winch truck occupied "pretty near [sic] all" of the paved portion of the highway. In response to the question, "There certainly wasn't enough room for a car to go in front of the truck without getting off the pavement, was there?" Pugh answered, "No, sir." It was the testimony of James Young, Jr., another employee of United and the "flagman" to the south past whom Guin drove, that the truck was "partially blocking both lanes of traffic." James Young, Sr., United's driller and that company's senior man present at the time of the accident, testified that there was "four or five feet clearance" between the truck and the edge of the road. The question was asked, "but he [Guin] couldn't have got his truck in there, could he?" and Young's answer was, "No way." Even Fitch testified that his truck was blocking all of one lane and part of the other, that he did not know exactly how much of the other lane he was blocking, that it "could have been impossible" for a car to go by, and that he doubted that a truck could have gotten by but he did not know for sure. Finally, Paul Dowdy, a United employee present at the scene of the

accident, testified that he "couldn't say" whether the truck occupied the entire width of the paved roadway, but that it "probably" blocked "more than half." Dowdy stated further in his testimony that there was not enough room for a vehicle to pass the truck and stay on the pavement, and that, "There wasn't no [sic] way he [Guin] could get by." This was all of the testimony on the issue. There was no testimony to the contrary.

The testimony is borne out by the physical facts. The winch truck was variously estimated as 20 to 25 feet in length. The paved portion of the highway was measured as 19 feet, 10 inches wide. There was no improved shoulder on either side of the highway, i. e., the grass was growing up to the edge of the pavement. There was a fairly steep embankment on both sides of the road at the place where the winch truck was parked, the ground dropping off steeply down to a creek bed. The winch truck was parked about twenty feet south of the ends of guard rails extending from a two-lane bridge over the creek.

When the above testimony is considered together with the physical facts, it is indisputable that the winch truck was blocking the highway to such a degree that there was insufficient space left for the free passage of traffic. That fact, and thus the statutory violation, was established as a matter of law. Therefore, no issue need have been submitted inquiring if such a fact existed.

Again, the general rule is that once negligence per se is established, a finding of proximate cause must be secured. *Missouri Pacific Railroad Co. v. American Statesman*, supra at 103. That case, however, is authority for the further proposition that proximate cause may be established as a matter of law and is sufficient to dispose of the proximate cause question in this case. In that case, a newspaper publishing company filed suit for damages resulting from the alleged negligence of the railroad company in running a boxcar into some steel scaffolding (referred to as the "tram") extending from the newspaper company's building over a spur track owned by the railroad company. Article 6559a provided that all structures built over railroad tracts must be not less than 22 feet above the rails. The scaffolding extended down to within 16 feet, 4 inches of the rails; thus, the American Statesman was found to be negligent per se. The Supreme Court held that proximate cause consists of two elements; (1) cause in fact, meaning that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred, and (2) foreseeability, satisfied by showing that the actor as a person of ordinary intelligence should have anticipated the danger to others by his negligent act. The court stated:

"An act wanting in ordinary care which actively aids in producing an injury as a direct and existing cause *need not be the sole cause*; but it must be a concurring cause and such as might reasonably have been contemplated as contributing to the result under the attending circumstances. It matters not what the actor believed would happen, but whether he ought to have reasonably foreseen that the event in question, or some similar event, would occur. [Citations omitted.]

"As for causation, we conclude that but for the American Statesman's erection of the tram in violation of the statute, the accident would not have occurred. Although Missouri Pacific was negligent in moving its car into the tram, such an incident was the kind of accident clearly contemplated by the Legislature when Article 6559a was enacted to provide sufficient clearance of structures built above or across railroad tracks.

"The majority of the Court is of the opinion that in this case proximate cause was established as a matter of law . . . . ." [Emphasis in original.] *Id.* at 103–4.

The court thereupon quoted approvingly from Lewie *Montgomery Trucking Co. v. Southern Pacific Co.*, 439 S.W.2d 691 (Tex. Civ.App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.), and *Missouri Pacific Railroad*

*Co. v. Dean*, 417 S.W.2d 357 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.), both of which hold that proximate cause exists as a matter of law where the circumstances are such that reasonable minds could not arrive at a different conclusion. *Missouri Pacific Railroad Co. v. American Statesman*, supra at 104–5.

The reasoning of the *American Statesman* case applies here. To paraphrase that case: as for causation in the instant case, we are of the opinion that but for Fitch's parking of the winch truck across the highway without leaving an unobstructed width of road for the free passage of traffic, in violation of the statute, this accident would not have occurred. Although Guin may have been negligent in colliding with the winch truck, such an incident was the kind of accident clearly contemplated by the Legislature when Article 6701d, section 93(a), was enacted to provide for sufficient unobstructed width of highway for the free passage of traffic by vehicles stopped, parked, or left standing on the paved or main-traveled part of the highway.

■ Fitch and Eagle Trucking argue that Guin's conduct constituted a "new and independent cause" of the accident, that term being defined in the court's charge. We do not agree. The intervention of an unforeseen and unexpected cause is not sufficient to relieve a wrongdoer from the consequences of negligence if the negligence directly and proximately cooperates with the independent cause in the resulting injury. *McAfee v. Travis Gas Corp.*, 137 Tex. 314, 153 S.W.2d 442, 447–8 (1941); *Marshall v. Joske's Inc.*, 581 S.W.2d 192, 194–5 (Tex.Civ.App.—San Antonio 1979, no writ).

■ We hold that proximate cause was established in the instant case as a matter of law. *Missouri Pacific Railroad Co. v. American Statesman*, supra; *Parrot v. Garcia*, 436 S.W.2d 897, 900 (Tex.1969).

Accordingly, the trial court erred in overruling Guin and Peden's motion for new trial. Their first point of error is sustained.

■ Appellant's tenth point of error complains that the jury's answer to special issue no. 2 was contrary to the great weight and preponderance of the evidence. We sustain this point. The jury found that Guin suffered no damages for his injuries resulting from the collision between the dump truck he was driving and the winch truck. The trial court instructed the jury they could consider physical pain and mental anguish suffered in the past and which may be suffered in the future, and the loss of earnings in the past.

The undisputed evidence reveals that Guin had a severe laceration 4 inches in length on his forehead which required 22 stitches; that his bottom lip was "cut nearly off"; that upper gums were bruised and cut, and he had surgery on upper gums and lower lip and gum; that he suffered several cuts and bruises around the face, shoulders and neck; that he suffered a broken right knee which required a cast; and that he has bruises on his sides. The record further shows that Guin spent seven days in the hospital, and out patient treatment continued for four weeks thereafter. It was twelve weeks after the accident before he worked again as a welder's helper. At the time of trial Guin testified he still had a problem with his knee with aches and throbs, and it bothered him when driving. There was medical testimony that he suffered much pain.

The evidence of Guin's injuries, and the pain and suffering connected with them, was undisputed therefore, the jury's answer "none" to issue no. 2 was contrary to the great weight and preponderance of the evidence. Since we now have comparative negligence in Texas, and since we have determined that Fitch and Eagle Trucking Company were negligent as a matter of law, we are of the view that *Tumlinson v. San Antonio Brewing Assoc.*, 170 S.W.2d 620 (Tex.Civ.App.—San Antonio 1943, writ ref'd w. o. m.) and those cases which have followed it are distinguishable from the case at bar.

## NO. 1215

We now address Fitch and Eagle Trucking Company's limited appeal of the trial court's granting of the motions for directed verdict of G & G Construction and Texas Bitulithic. No complaint is made regarding the trial court's action in granting the motion for directed verdict of United Drilling, and that entity is not a party to this appeal. In the first point of error Fitch and Eagle complain of the granting of Texas Bitulithic's motion for directed verdict, and in the second point they complain of the granting of G & G Construction's motion. We shall discuss both points together.

It is the basic contention of Fitch and Eagle Trucking that Guin was an employee of Peden *and* G & G Construction *and* Texas Bitulithic at the time of the accident. Is is undisputed that Guin was an employee, i. e., a servant, of Peden. It is also undisputed that if G & G and/or Texas Bitulithic are liable, their liability is vicarious and is to be derived from an employer-employee or master-servant relationship between them and Guin.

The supreme test in determining whether a master-servant relationship exists is the "right to control." *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 590 (Tex.1964). In that case the court further stated, at p. 589:

> "The doctrine which holds the master liable for the torts of his servant committed in the course of his employment is essentially a policy doctrine and except for acts personally directed by the principal, the liability of the master is founded upon the contractual arrangement with the servant, either expressed or implied which vests in him the right to control the details of the work. [Citations omitted.] Certainly if the right of control of details has a contractual basis, the circumstance that no actual control was exercised will not absolve the master of liability. [Citations omitted.] Conversely, an occasional assertion of control should not destroy a settled relationship agreed to by the parties."

The contract may be oral or written. It has also been said that in practically all cases the independent nature of an agreement of employment may be inferred when the party is engaged in a distinct and generally recognized employment and his stipulated remuneration is to be determined by some quantitative standard. *Dave Lehr, Inc. v. Brown,* 127 Tex. 236, 91 S.W.2d 693, 694 (Tex.Com.App.1936, opinion adopted); *William Sommerville & Son, Inc. v. Carter,* 571 S.W.2d 953, 956 (Tex.Civ.App.—Tyler 1978), affirmed, 584 S.W.2d 274 (Tex.1979).

Generally, an employer is not liable for the acts of an independent contractor. *T. J. Mansfield Construction Co. v. Gorsline,* 292 S.W. 187, 188 (Tex.Com.App. 1927, judgment adopted); *J. A. Robinson Sons, Inc. v. Ellis,* 412 S.W.2d 728, 735 (Tex. Civ.App.—Amarillo 1967, writ ref'd n. r. e.). In *William Sommerville & Son, Inc. v. Carter,* supra, we said:

> "An independent contractor has been defined as any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details. The recognized tests to determine when one is acting in the capacity of independent contractor are (1) the independent nature of his business; (2) his obligation to furnish necessary tools, supplies and materials to perform the job; (3) his right to control the progress of the work except as to final results; (4) the time for which he is employed; (5) the method of payment, whether by the time or by the job. *Pitchford Land and Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 603 (1961); *Industrial Indemnity Exchange v. Southard,* 138 Tex. 531, 160 S.W.2d 905, 907 (1942)."

Moreover, it was said in *Shannon v. Western Indemnity Co.,* 257 S.W. 522 (Tex.Com. App.1924, judgment adopted), at p. 524:

> "There are numerous evidential elements which go to determine the quality of a contract as affecting the question of whether one is an independent contractor

or not. It is seldom or ever that any one of these elements is decisive of the question."

Every person who is found performing the work of another is presumed to be in the employment of the person whose work is being done. *Taylor, B. & H. Ry. Co. v. Warner*, 88 Tex. 642, 32 S.W. 868, 870 (Tex. 1895); *Texas State Bank v. Elliott*, 533 S.W.2d 404, 406 (Tex.Civ.App.—Beaumont 1976, no writ). The burden is upon one claiming an exemption from liability for the acts of a workman on the ground that he was an independent contractor to establish the independence of the contract of such workman. *Taylor, B. & H. Ry. Co. v. Warner,* supra; *Roland Associates, Inc. v. Pierce*, 476 S.W.2d 748, 761 (Tex.Civ.App.—Beaumont 1972, no writ). Where the presumption, which is not evidence, is rebutted by contrary evidence, the presumption of employment or of a master-servant relationship cannot stand, and the conflicting evidence on the status of the workman should be submitted to the jury. *Hastey v. Humphries*, 576 S.W.2d 159, 162 (Tex.Civ. App.—Amarillo 1978, writ ref'd n. r. e.). Where the facts are not disputed, however, and the evidence is reasonably susceptible of but a single inference, the question whether the relationship of employer and independent contractor exists is one of law for the court. *Rodriquez v. Zavala*, 279 S.W.2d 604, 606–7 (Tex.Civ.App.—San Antonio 1955, no writ).

We are of the opinion that the evidence in the record before us is reasonably susceptible of but a single inference, i. e., that there was no master-servant or employer-employee relationship at the time of the accident either between G & G Construction and Guin or between Texas Bitulithic and Guin. There was no written contract between Texas Bitulithic or G & G and Peden or Guin. The evidence shows that although Peden was an assistant manager for Texas Bitulithic, he owned and operated the dump truck as his own business, separate and distinct from his employment by Texas Bitulithic. He bought the truck with his own funds, paid the expenses of the truck himself, none of the money he earned with the truck went to Texas Bitulithic, and Texas Bitulithic did not direct Peden in the operation of his truck. Peden employed Guin as his driver, Guin receiving 30% of the gross earnings of the truck. Peden made no deductions for income tax withholding, social security tax, etc., from his payments to Guin. G & G contracted with Texas Bitulithic to deliver sand to the latter. Coincidentally, it was Peden, acting as an employee of Texas Bitulithic, who entered into the contract with G & G on behalf of Texas Bitulithic. G & G had at least two trucks of its own with which to make deliveries to Texas Bitulithic and its other customers, Texas Bitulithic not being G & G's only customer. Under G & G's contract with Texas Bitulithic, G & G was free to haul for other customers and was not required to haul for Texas Bitulithic at any certain time. G & G was paid $1.85 per ton of sand delivered to the hot mix plants. Texas Bitulithic made no deductions from the payments for income tax withholding, social security tax, or any other purpose. Texas Bitulithic did not share in G & G's profits and neither did the latter share in those of the former. During periods when G & G would need more trucks than it had available itself, Gamel would normally call Peden and arrange for the use of Peden's truck. G & G had in this manner used Peden's truck on approximately nine occasions. Peden's truck was used approximately 65% of the time for customers other than G & G. G & G had no superior claim to Peden's truck or Guin's services as driver, *vis-a-vis* Peden's other customers. Gamel or Grantham would tell Peden or Guin where the sand was to be picked up and where it was to be delivered. G & G paid Peden $1.65 per ton of sand delivered, and it made no deduction from such payments for income tax withholding, social security tax, or other purpose. Neither Peden nor G & G shared in any way in the other's profits. We think it is clear from the evidence that the relationship of Guin and Peden to G & G and Texas Bitulithic was that of an independent contractor.

Fitch and Eagle Trucking argue repeatedly that Guin's and Peden's actions in furthering the business of both G & G and Texas Bitulithic made the relationship that of master and servant. Manifestly, however, that is not the test; the test is right to control. The furtherance of one's business by another is a matter addressed to the issue whether the act of a servant, once the relationship of master and servant *has been established*, was within the course and scope of his employment. The fact that G & G and Texas Bitulithic exercised some general control or supervision over Guin and Peden does not mean that they had the right to control the details of the work. It is the *details* of the work over which the employer must have the right to control before a master-servant relationship exists. *Newspapers, Inc. v. Love*, supra; *Elder v. Aetna Casualty & Surety Co.*, 236 S.W.2d 611, 613 (Tex.1951). In *Travelers Insurance Co. v. Ray*, 262 S.W.2d 801, 803 (Tex.Civ.App.—Eastland 1953, writ ref'd), the court stated:

> "The relation of master and servant exists where the master retains or exercises the power of control in directing not merely the end sought to be accomplished but as well the means and details of its accomplishment; not only what should be done but how it should be done."

There is no evidence that G & G of Texas Bitulithic attempted to tell Guin how to perform the details of his work in driving the truck and loading and unloading the sand. The evidence showed that the control which G & G and Texas Bitulithic exercised over Peden and Guin was for the purpose of seeing that the work was done properly and expeditiously and that proper results were accomplished. This manner of general control over an independent contractor does not result in making him a servant. *Dave Lehr, Inc. v. Brown*, supra; *Texas Employers Insurance Association v. Bewley*, 560 S.W.2d 147, 150 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). The fact that Guin and Peden worked for G & G until they were told they were no longer needed, and the fact that G & G had the power to "lay off" (the term used by Grantham in his

testimony) Guin, do not alter our conclusion. *Dave Lehr, Inc. v. Brown*, supra. Fitch and Eagle also point out that Peden, G & G, and Texas Bitulithic engaged the same law firm to represent them in this cause. This factor, we feel, is entirely irrelevant to any issue in this appeal.

A case strikingly similar to the one at bar is *Dave Lehr, Inc. v. Brown*, supra. In that case a third party (Brown) was struck by a truck driven by one Mariano Valderrano. Brown sued Dave Lehr, Inc., for damages, alleging that Valderrano was an employee of Dave Lehr, Inc. Valderrano owned his own truck and hauled goods for others for hire. He paid his own expenses of upkeep and costs of operation. Dave Lehr, Inc. was in the business of buying and selling rock, gravel, sand, cement, and other materials, the delivery of which was made by owners and drivers of trucks such as Valderrano. The drivers were paid by the load. When Valderrano began work for the corporation, there was no agreement that he was to continue hauling for any specific length of time. He was free to leave when he chose and return when he chose and could haul for others if he desired. He was given instructions as to the amount of material to load and where it was to be delivered. The drivers were also generally given instructions to use the most direct route and were instructed to observe traffic laws. The court concluded that the general control exercised by the corporation over Valderrano for the purpose of seeing that the work was properly and expeditiously done and that proper results were accomplished did not result in making Valderrano its servant. The court further concluded that the fact that the corporation could refuse to give Valderrano further work if he disobeyed instructions was of no substantial evidentiary value in determining the question whether a master-servant relationship existed. In addition, it was held that the instructions given to Valderanno to observe traffic laws could not be regarded as an exercise of control in the manner and method of doing the work. Additional cases whose facts are similar to those of the

instant case and in which the courts held the relationship to be that of employer-in-dependent contractor rather than master-servant, are *Smith Brothers, Inc. v. O'Bryan*, 127 Tex. 439, 94 S.W.2d 145 (Tex. Com.App.1936, opinion adopted); and *Riggs v. Haden Co.*, 127 Tex. 314, 94 S.W.2d 152 (Tex.Com.App.1936, opinion adopted); moreover, identical holdings on similar facts have been made in workmen's compensation cases: *Industrial Indemnity Exchange v. Southard*, 160 S.W.2d 905 (Tex.1942); *Southern Surety Co. of New York v. Scheel*, 125 Tex. 1, 78 S.W.2d 173 (Tex.Com.App. 1935, opinion adopted); *Security Union Insurance Co. v. McLeod*, 36 S.W.2d 449 (Tex. Com.App.1931, judgment adopted); *Southern Surety Co. v. Shoemake*, 24 S.W.2d 7 (Tex.Com.App.1930, judgment adopted).

So also in this case Peden owned his own truck and paid its expenses; he was paid by the load; there was no agreement that his truck was to be used for any specific length of time; he was free to refuse employment by G & G and could and did haul for others; Guin operated the truck in his own way; and the control exercised by G & G Construction and Texas Bitulithic was, at most, general in nature. In *Smith Brothers, Inc. v. O'Bryan*, supra, the court stated 127 Tex. 439, 94 S.W.2d at p. 149:

> "In practically every case of employment of truck drivers the employer has a right to designate the materials to be hauled, to direct to whom and where they are to be delivered, and to require a receipt showing delivery. He also has the right to require expeditious service to the end that the general results of the employment may be attained. Yet it has never been held that these elements of control were sufficient to negative the independence of the contract, when, as here, practically all of the predominant circumstances indicate that the relationship is one of employer and contractor."

■ The trial court having instructed a verdict in favor of G & G Construction and Texas Bitulithic, there must be no evidence having probative force upon which a jury could have made a finding against them and in favor of Fitch and Eagle Trucking. *Anderson v. Moore*, 448 S.W.2d 105 (Tex. 1969); *Burnett v. First National Bank of Waco*, 536 S.W.2d 600, 607 (Tex.Civ.App.—Eastland 1976, writ ref'd n. r. e.). The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. Id.: *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752, 753 (Tex.1970). Having applied this test in the instant case, we overrule Fitch and Eagle Trucking's points of error complaining of the granting of the motions for instructed verdict of G & G Construction and Texas Bitulithic.

■ Upon reviewing the statement of facts, we have noticed that portions of the testimony have been bracketed in red ink by one of the parties. As we have stated previously, *Moore v. Grantham*, 580 S.W.2d 142, 152 (Tex.Civ.App.—Tyler 1979, writ pending), we strongly disapprove of such a practice.

In view of our holding that the jury's answer to special issue no. 2 was contrary to the great weight and preponderance of the evidence, and in view of our conclusion that Fitch and Eagle Trucking Company were negligent as a matter of law which would cause the comparative negligence to arise, it becomes necessary to reverse the judgment of the trial court in part and remand that part for a new trial. Article 2212a; Rule 277.

Accordingly, that portion of the judgment of the trial court decreeing that Johnnie Wesley Guin and Billy Wayne Peden take nothing by their suit against Robert Fitch and Eagle Trucking Company is reversed and remanded; and that portion of the judgment of the trial court in favor of Robert Fitch and Eagle Trucking Company against Johnnie Wesley Guin and Billy Wayne Peden is also reversed and remanded; in all other respects the judgment is affirmed.