**598**

EAGLE TRUCKING COMPANY, et
al., Appellants,

v.

TEXAS BITULITHIC COMPANY, et
al., Appellees.

Nos. 1215, 1215–A.

Court of Civil Appeals of Texas,
Tyler.

July 16, 1981.

Rehearing Denied Aug. 13, 1981.

Black C. Erskine, Kenley Boyland, Cogh-
lan & Erskine, Longview, Blake Bailey,
Wellborn, Houston, Bailey & Perry, Hen-
derson, for appellants.

Melvin R. Wilcox, III, Otto A. Ritter,
Roberts, Harbour, Smith, Harris, French &
Ritter, Longview, Mike Hatchell, Ramey,
Flock, Hutchins, Jeffus, McClendon &
Crawford, Tyler, for appellees.

McKAY, Justice.

This cause has been remanded to this
court, 612 S.W.2d 503, for the exercise of
our fact-finding jurisdiction over two jury
findings. They are whether the jury's an-
swers to issue 1(a) and issue 2 are against
the great weight and preponderance of the
evidence.

Issue 1(a) inquired of the jury
whether Eagle Trucking Company was neg-
ligent in blocking the lane of traffic on the
road where the accident occurred. Issue 1
had five parts, the other four being wheth-
er Eagle Trucking was negligent 1(b) in
failing to keep a proper lookout; 1(c), in
failing to post an individual with red flag
south of the bridge before loading the
pump; 1(d), in failing to post warning de-
vices; and 1(e), in creating a hazardous
condition.

We are of the opinion that in order for us
to answer whether Eagle Trucking was
negligent in blocking the lane of traffic
necessarily depends upon the total circum-
stances as they existed at the time of the
accident. Eagle Trucking may not have
been negligent in blocking the road if its
employees had kept a proper lookout, had
posted flagmen with red flags, or had
placed warning devices; on the other hand,

Eagle may have been negligent in blocking the traffic lane or lanes if it did not take adequate precautions to warn traffic that might travel the road that the road was totally or partially blocked. To say it another way, the answer to the ultimate issue (blocking the road) depends upon the answer to the several questions upon which the ultimate issue depends.

The general facts are set out in our previous opinion, 590 S.W.2d 200; however, we will review them in more detail.

Robert Pennington, who was a supervisor of Eagle and in charge of the operation of the Eagle truck and its driver Fitch, testified it was the practice of Eagle to use flagmen and flags when part of a highway was to be blocked, and he had instructed his drivers that there should be flagmen on each side of the truck if all or a portion of the highway would be blocked. He said most of Eagle's cars and trucks carry regulation oilfield red flags. Fitch and Pennington were the only Eagle employees at the scene—the others were employees of United Drilling whose pump they were trying to winch onto Eagle's truck, which truck Pennington said was approximately 25 feet long. He estimated the roadway to be 30 feet wide, and it had no improved shoulders.

Pennington said it was necessary to come straight up the bank with the pump they were loading, the back wheels of the truck were even with the edge of the pavement and the truck extended across the road as far as the truck was long. He said the truck was parked so as to pull a straight tug on the winchline. He further said he told the United driller there were flags in his car. The driller said he would get a flag, but Pennington did not know whether he did. Neither did Pennington look to see whether the flagmen had flags, though he testified he could have done so. He said he did not see flagmen flagging anybody, despite the fact that it was his responsibility to make flags available.

The driver of the Eagle winch truck, Robert Fitch, said there was no way he could have pulled the pump out of the water without blocking the road, or at least a part of it, and that the ground was too soft to drive down to the creek and load the pump because it would not hold up the truck. He said it had rained three days in succession before the accident.

Fitch further testified that his supervisor Pennington was standing beside the truck giving him instructions and signals, and his truck signal flashers were on and could be seen from the side on the front end of the truck. He said when he got upon the highway, as he did on the occasion in question, the only safe procedure was for somebody to flag for him; he stated he had flaggers that day and knew he was going to block the highway. He presumed the flaggers got flags out of Pennington's car, but he was mistaken. He said also that the distance between the bottom of the road embankment and fence was sufficiently wide to get his truck between them, but because it had been raining and the ground was too soft, he got stuck trying to back down there. Fitch further testified if he had been instructed to do so, the pump could have been "snaked" down the road if there had been something to tie on to such as a tree or solid object and the truck could have remained on the shoulder of the road, but the reason for getting his truck perpendicular with the pump was to have as little bind on the winchline as possible to keep the pump from turning over.

James Vernon Young, Jr., an employee of United Drilling, was sent to flag traffic approaching from the south of the winch truck. He was some distance from the winch truck. He testified that he saw no flares. Also, he did not have any flag, but only his gloves and hard hat. He flagged Guin's truck with gloves in one hand and hard hat in the other while he was in the middle of the road. He started flagging Guin when his truck was more than 100 yards away and advancing at an estimated speed of more than 50 miles per hour.

Raymond Pugh, employee of United, flagged on the north side of the winch truck. He had no flag and was not told flags were available; additionally, he had

worked with Eagle before but had never seen them provide flags for flagmen. He flagged with his hands only. He said the winch truck occupied "pretty near all" of the road. He did not see any warning flares, blinking reflectors or lanterns.

The driller for United, James Vernon Young, Sr., testified there were no flares or reflectors put out at the scene and that his son did not have a red flag.

The evidence set out above indicates that it is uncontradicted that the flagman or flagmen were not furnished with and did not have any flag with which to warn traffic that the road ahead was blocked. It is also uncontradicted that there were no warning devices posted on the road. All witnesses at the scene of the accident who testified said that there was not sufficient space for the Guin dump truck, or any other vehicle, to pass by the winch truck, or that they did not know whether such passage could be made. From all the facts in the record the conclusion may be drawn that the road was effectively blocked and that the failure to warn the traffic of such road blockage by the use of red flags or other warning devices demonstrates that the jury's answer of "no" to issue 1(a) was against the great weight and preponderance of the evidence. We so find.

■ Issue No. 2 inquired of the jury what sum of money, if any, would fairly and reasonably compensate Guin for the injuries sustained in the accident considering physical pain and mental anguish, both past and future, and loss of earnings in the past. The jury answered "none" to this issue.

Johnnie Wesley Guin, driver of the dump truck, testified that his right knee cap was broken, that he had some surgery on his upper gums and on his lower lip and lower gum, that he had 22 stitches in his forehead, and that he had several cuts and bruises around his face and shoulders and neck. He further said he was in the hospital for seven days. His false teeth were broken in the accident.

O. W. Elkins, M.D., physician and surgeon, testified that Guin had a severe laceration across his forehead, multiple lacerations of his lower lip and a fractured patella (kneecap) and generalized body contusions. He sutured all of the lacerations, gave Guin a tetanus shot and a sedative for pain and admitted him to the hospital because of the four inch head laceration where the skin was raised up "like it would have scalped him if it had gone far enough." Guin was referred to Dr. Hoover for his fractured knee cap and a long leg cast. Dr. Elkins further said that after the initial treatment on February 23, 1976, and his admission to hospital that date, he saw Guin on March 5th in his office, again on March 18th, and again on April 15th when he released him to work as a truck driver. He further testified that the condition of Guin at the time he first saw him was calculated to cause a lot of pain and that Guin spent six days in the hospital and that he had pain during most of his hospital stay. He saw Guin twice a day in the hospital. On release, April 15th, he felt Guin was well.

The testimony of George M. Hoover, M.D., orthopedic surgeon, was that he saw Guin on February 26, 1976, at the request of Dr. Elkins, that he applied a cast to his leg and saw him daily for another two or three days in the hospital until he went home. He then saw Guin on March 18 and 31 and April 8 and 22 in his office. Hoover's diagnosis was fracture of the patella, and in his opinion the injury was caused by the accident described by Guin and that such injury was calculated to cause physical pain. The doctor said he would expect Guin to have future difficulty with his knee. Guin was released to work on April 22, 1976.

Dr. Royce Floyd, dentist, saw Guin on April 19, 1976. He noted Guin had had lacerations of the gums which had healed and his upper lip had grown to his gums. He had to separate lip and gums and prepare dentures. It was painful to cut or separate the lip and gums, he said, something like having a tooth pulled. About a month later he fitted Guin's dentures. He said Guin last on September 11, 1976.

From the record it is undisputed that the injuries he received in the accident caused physical pain and suffering before the time of trial. It is also undisputed Guin lost some earnings as a result of the accident. Consequently, we find that the jury's answer of "none" to issue two was against the great weight and preponderance of the evidence.

The judgment of the trial court that John Wesley Guin and Billy Wayne Peden take nothing in their suit against Fitch and Eagle Trucking is reversed and the cause remanded.