Joyce ROWLAND, Appellant,

v.

STANDARD FIRE INSURANCE COM-
PANY, Appellee.

No. 709.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Dec. 20, 1972.

Rehearing Denied Jan. 17, 1973.

**152**

———◆———

Gordon D. Gary, Lucas, Hudson & Gary, Houston, for appellant.

William H. Young, Fulbright, Crooker & Jaworski, Houston, for appellee.

BARRON, Justice.

This is a workmen's compensation case. Mrs. Joyce Rowland, plaintiff below and appellant here, sustained an injury while working at a Ramada Inn in Houston on July 7, 1970 when she fell into a bathtub while affixing safety stripping to its surface.

Plaintiff filed suit in the district court against Standard Fire Insurance Company, appellee-carrier, to recover for alleged permanent total disability under the Workmen's Compensation Act. Trial was had before a jury.

Prior to the submission of the charge to the jury the parties stipulated in open court that: (1) plaintiff, Joyce Rowland, received an accidental injury on July 7, 1970 while working in the course and scope of her employment with Ramada Inns; (2) plaintiff was earning, prior to her accidental injury, an average weekly wage of $66.92 as computed under the workmen's compensation laws of Texas; (3) based upon her average weekly wage, plaintiff would be entitled to $40.15 per week for any total disability found by the jury to result from her said accidental injury; and (4) defendant, Standard Fire Insurance Co., had previously paid to plaintiff weekly compensation in the total sum of $1,177.47, for which amounts defendant would be entitled to credit against the amount found by the

court and jury to be due. In answer to special issues the jury found that plaintiff's injury on July 7, 1970 was a producing cause of a total disability beginning on said date and continuing for a period of nine weeks. It also found such accident to be a producing cause of a partial disability beginning on September 5, 1970 and lasting 42 weeks. Her earning capacity during this period of partial disability was found to be $64.00.

The trial court found plaintiff entitled to recover the sums of $361.35 for the nine weeks of temporary total disability and $73.50 for the 42 weeks of temporary partial disability, for a total sum of $434.85.

Defendants were credited with their payments of $1,177.47 against the sums found for plaintiff and a take-nothing judgment was entered on behalf of plaintiff.

From the judgment plaintiff duly perfected this appeal.

■ Appellant's first point of error complains of a conflict in the jury's answers to special issues one and two in that there is a three-day period in which it appears the jury found plaintiff was both totally and partially temporarily disabled. Such conflict, appellant urges, was not cured by the trial court, is irreconcilable and requires our setting the judgment aside and remanding for a new trial. This point of error is overruled.

We do not believe that the alleged conflict in the answers of the jury are in fact material. After finding that the injury of July 7, 1970 was a producing cause of total disability with a beginning date of July 7, 1970, the jury in special issue number 1(b), in answer to the issue "State the duration by answering 'Permanent' or by giving the number of weeks.", answered "9 weeks". By special issue number two such injury of July 7, 1970 was found to be a producing cause of partial disability, with a beginning date of September 5, 1970, lasting 42 weeks, and during which time appellant had a total earning *capacity* of $64.00. It

is clear to us that the jury intended to award the appellant nine weeks of temporary total disability and 42 weeks of temporary partial disability immediately following the period of temporary total disability. Thus, the answer to special issue 2(a) (beginning date of partial to be September 5, 1970) is material only to the extent that it makes the two periods of disability consecutive. The judgment entered upon the verdict clearly specifies that appellant would be entitled to nine weeks of temporary total disability, apparently followed by 42 weeks of temporary partial disability, thereby curing the technical conflict and rendering any conflict harmless and immaterial. See and compare, C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 194 (Tex.Sup.1966); Van Deventer v. Gulf Production Co., 41 S.W.2d 1029, 1034 (Tex.Civ.App.—Beaumont 1931, writ ref'd). Mrs. Rowland has not been prejudiced in any way by the alleged conflict and in fact would receive both total disability benefits and partial disability benefits for the same three-day period. We see no reversible error for the above reasons.

It should be noted that the technical conflict which occurred in this case was in all likelihood the result of the jury's being asked to determine the duration of plaintiff's total incapacity in weeks rather than setting a terminal date for the period. This problem was recognized in Texas Pattern Jury Charges, Vol. 2, pp. 70, 76 and 78 (1970). Although the jury could have properly made its finding in fractions of a week, thereby avoiding any possible conflict, no instruction was given to this effect. The jury apparently approximated the number of weeks between July 7, 1970, the date it found for the inception of total disability, and September 5, 1970, the date it found for the inception of partial disability, and entered that figure for the duration of the total incapacity. Such an alleged conflict is immaterial, we feel, where the change in result is so minimal, if any change there be at all. No good purpose could be served by this Court's setting aside the trial court's judgment where the conflict resulted in a more favorable finding to the complaining party than had it not existed, where the conflict itself was more a creature of how the jury failed properly to dovetail the periods of total and partial disability in the framework in which special issues were submitted rather than of any fundamental inconsistency in findings, and where either conflicting answers being disregarded would result in no different judgment than that entered by the trial court.

Appellant's points of error two thru seventeen basically complain that the jury's answers to special issues 1(b), 2, 2(a), 2(b) and 2(c) are in disregard of the overwhelming weight and preponderance of the evidence so as to be manifestly unjust. Said points of error are overruled.

Four witnesses testified at the trial, three medical experts and appellant. Appellant's family physician, Dr. Walmsley, testified that he treated her on July 9, 1970 for complaints referable to the July 7, 1970 injury. Based upon her complaints and history he concluded that she had strained her neck and shoulder. Dr. Walmsley saw her at subsequent times though it does not appear that he performed any additional examination. It was his medical opinion as of January 10, 1972 the last time he saw Mrs. Rowland, that appellant was disabled from performing *some* of her duties as a *maid* and that disability "impaired" her ability to obtain and retain employment. In the context of his remarks it is clear that Dr. Walmsley's opinion is based almost wholly on subjective findings, that is the complaints by appellant of pain and discomfort when attempting body movements. The doctor stated he had no record that she had significant limitations of movement in the upper body (the area of disability complained of) at the time he examined her. Further the doctor had no medical opinion as to whether such condition of pain would continue in the future.

The second physician to testify was Dr. Davis, an orthopedic surgeon. He testified that a complete orthopedic examination on January 19, 1972 revealed no definite objective symptoms of findings to substantiate Mrs. Rowland's complaints. In addition, he said he found she had a full range of motion with her arms, had a normal grasp with her hands, and generally had normal motor function in both upper extremities, though she had some tenderness in the cervical area and she complained of considerable discomfort and pain in her right arm and shoulder and a lack of feeling in her right index finger. On the basis of the patient's complaints and an electromyograph test performed on her by a Dr. Caram, Dr. Davis concluded that her condition of pain and discomfort was caused by a cervical sprain and nerve root compression in the right arm, respectively. Further, in all medical probability these causes resulted from the injury of July 7, 1970. Dr. Davis felt this condition of pain would continue for sometime but could not specify any particular period of time. When pressed further by plaintiff's counsel he answered "yes" to the question whether in reasonable medical probability this condition would continue the rest of her life. He also stated that Mrs. Rowland "would be incapacitated for some of the things she would be required to do as a maid," but in later testimony conceded she could work as a sales person or cigar stand operator if she did not have to lift any heavy objects. The plaintiff had had prior experience in both types of work.

The next witness was Dr. Thomas McGuire, a neurological surgeon, appellee's only witness. Dr. McGuire testified that he had examined appellant on September 5, 1970 and October 31, 1970. The examination revealed a numbness over the right middle finger which extended upward on both the back and the frontal surface to the elbow, no limitation or complaint of pain in her bending over, restrained movement of the face because of pain in the right side and down the back of the neck, and complaints of pain in her right arm. Significantly, Dr. McGuire found no objective symptoms of disability related to the July 7 injury. He concluded that her condition of discomfort was the result of the July 7, 1970 accident which had sprained the muscles in the shoulder, neck and head area, but which condition could be corrected in a reasonable time by the conservative treatment (traction, medication and physical therapy) that a Dr. George was then conducting. Dr. McGuire felt that Mrs. Rowland's condition was neither permanent nor serious and that in a reasonable time she could again perform the type of work she had been performing, though he did not recommend that she necessarily start back to the same work following either the September or October examination.

The final witness was the appellant, Mrs. Rowland. She testified that she could not perform all of her functions as a maid because of pain in her arm and shoulder, could not lift heavy objects, and felt she would not be able to stand on her feet for long periods of time as might be required of a sales person. She also mentioned having worked before as a sales person and cigar stand operator.

■ Appellant complains that the jury's answer to special issue 1(b) that the duration of the total disability commencing on July 7, 1970 was nine weeks is in disregard of the preponderance of the evidence so as to be manifestly unjust. Such complaint finds no support in the testimony. Both at the July 9, 1970 examination by Dr. Walmsley and the September 5, 1970 examination by Dr. McGuire, neither doctor could find any objective symptoms, that is physical symptoms based on something other than the patient's description of pain or disability. Dr. McGuire found plaintiff to have full range of movement in her upper extremities. Dr. Walmsley indicated no limitations to her body movement and further found no evidence of swelling of which plaintiff had complained at the July examination. From the evidence presented

at trial it is apparent that there was little, if any, evidence indicating a longer period of total incapacity than found by the jury. To the contrary there is some evidence which would have supported a jury's finding a shorter period of total incapacity.

■ Appellant next complains of the jury's finding of partial disability, special issue 2, as being in disregard of the great weight of the evidence. Both doctors Walmsley and Davis testified that plaintiff would be disabled from performing *some* duties as a maid. Dr. Davis believed she could perform as a sales person or cigar stand operator. Only Dr. Walmsley testified that her disability impaired her ability to obtain and retain employment. His conclusion, however, was based almost wholly upon plaintiff's complaint of pain and discomfort. The jury would not be bound to accept the plaintiff's testimony of pain and discomfort because it is dependent upon her credibility. It follows that a jury would not be bound by the testimony of a medical witness when the credibility of his testimony is "manifestly dependent upon the credibility of the information imparted to the witness by the claimant," here Mrs. Rowland. Williams v. Westchester Fire Insurance Company, 414 S.W.2d 210 (Tex.Civ.App.—Ft. Worth 1967, no writ). There was no preponderance of evidence contrary to a conclusion of partial disability.

■ Appellant also urges that the period of partial disability (42 weeks) found by the jury was in disregard of the great weight of the evidence. Dr. Walmsley was unable to give a medical opinion as to whether Mrs. Rowland's condition of pain would continue into the future. Dr. Davis rather reluctantly agreed that her condition would in all medical probability continue the rest of her life. Dr. McGuire, on the other hand, felt that within a reasonable time of his October 31, 1970 examination of the plaintiff, her condition could be corrected. Again it should be noted that to the extent that the medical testimony is based upon the credibility of the information imparted by the plaintiff, the jury is not bound to accept it. Although there is some evidence that the period of partial disability exceeds the 42 weeks as found, it does not amount to a preponderance of the evidence.

■ Finally, appellant contends that the jury's finding of $64.00 for plaintiff's earning capacity during her period of partial disability is alternatively, without any support in the evidence, without sufficient evidence in support thereof, or is against the great weight of the evidence. The great weight point is overruled for the record does not reflect that any other figure would be more appropriate. As to the sufficiency points there was testimony from Dr. Davis that plaintiff could perform as a sales person or cigar stand operator as she had in the past, provided she did not have to lift any heavy objects. Further, appellant's medical witnesses testified that her disability would only prevent her from doing *some* of her duties as a maid. There was ample evidence of appellant's having wage earning capacity.

■ The jury's finding of $64.00 per week appears to be based on a $1.60 an hour wage scale for a 40 hour week. As pointed out in Fidelity & Casualty Co. of New York v. Read, 433 S.W.2d 797, 798 (Tex.Civ.App.—Waco 1968, writ ref'd n. r. e.) a claimant's future ability to earn wages is not susceptible of exactitude and "at best the uncertain answer must be the result of deduction from circumstances leading to a reasonable estimate." The lack of direct evidence of wage earning capacity is not fatal to the jury's finding here. We cannot say the estimate was unreasonable or unwarranted by the circumstances and evidence of this case.

Judgment of the district court is in all things affirmed.

COULSON, J., not participating.