TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellant,

v.

Rodrigo CAMPOS, Appellee.

No. A14–82–896CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 19, 1984.

Mike Morris, James H. Limmer, Tekell, Book & Matthews, Houston, for appellant.

James Boanerges, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

ELLIS, Justice.

This is a worker's compensation case. Texas Employers' Insurance Association appeals from a judgment based upon a jury verdict which awarded damages to Rodrigo Campos for total and permanent incapacity, resulting from injuries sustained by appellee during the course and scope of employment. We affirm.

We summarize the facts for clarity. At the time of his injury, Rodrigo Campos (appellee) had worked in the maintenance department of Freedman Brothers Packing Company, since arriving in this country seven years prior from Costa Rica. Campos had a second grade education, and had worked as a farm laborer in his native country. He was unable to read or speak English. Campos' regular duties at Freedman required him to clean the slaughterhouse, sacking meat scraps left on the floor, then scrubbing it down before the butchers came on the following shift.

On February 17, 1981, while he was scraping the slaughterhouse floor, Campos was involved in an altercation with his foreman, Alexis Abarca. During the course of the argument, Campos fell to the floor, and Abarca fell on top of him. The next day,

after experiencing chest pain, Campos was sent to a Dr. Gonzales. Approximately ten days later, he was examined by a Dr. Jocson who treated him for a bruised rib cage. (Dr. Jocson had previously treated Campos for a back sprain in July of 1980.) Campos then returned to work. At that time, he did not mention any back pain.

Dr. Jocson testified that Mr. Campos called him during the early part of March, complaining of pain in his chest *and* lower back. On March 16, 1981, Dr. Jocson examined Campos and found some irritation of the nerve root in his lumbar spine. After the doctor's examination and a series of tests resulted in an abnormal finding, Dr. Jocson performed a lumbar laminectomy on March 30, 1981, to identify the problem. He removed some material from around the nerve which gave Campos some relief. In September 1981, appellee was told he could return to light work duty, restricting his lifting to about twenty pounds. Dr. Jocson saw Campos on October 29, 1981, at which time Campos was essentially free of any significant pain. He was discharged from regular follow-up visits at that time. Campos was subject to flare-ups from time to time which Dr. Jocson diagnosed as post-traumatic arthritis in his back, resulting from his injury.

Campos returned to Dr. Jocson on April 27, 1982, complaining of back pain. He said he had strained his lower back the previous day while moving some paper rolls at work. Dr. Jocson diagnosed the problem as strained muscles in his lower back. Campos had another flare-up of back pain on June 3, 1982, following some strenuous activities. Dr. Jocson advised him to wear his lumbar corset at work to prevent further strain. He also reminded him to avoid bending over or stretching too much.

When Campos' supervisors discovered he was working with a corset, they refused to allow him to continue to work. They demanded he provide them with a full medical release, stating that he could work without a back brace, with no danger of injury. Dr. Jocson refused to give such a release in view of Campos' medical history. He testified that Campos would need to exercise diligent care in performing his work duties in order to avoid re-injury. Campos was still unemployed at the time of trial. The jury found Campos to be totally and permanently incapacitated since March 4, 1981. Texas Employers' Insurance Association appeals from the jury's findings and resulting judgment.

In points of error one and two, appellant claims the evidence was factually insufficient to support the jury's finding that appellee was injured in the course of his employment. We disagree.

It is well settled that in order for an employee to recover worker's compensation benefits, he must prove that he was injured in the course of his employment. A claimant must show (1) the injury occurred while claimant was engaged in the furtherance of his employer's business or affairs, and (2) the injury was of the kind or character originating in the employer's work. *Texas Employers Ins. Ass'n v. Page*, 553 S.W.2d 98 (Tex.1977); TEX.REV.CIV.STAT.ANN. art. 8309, § 1 (Vernon 1967).

In *Lumberman's Reciprocal Ass'n v. Behnken*, 112 Tex. 103, 246 S.W. 72, 73 (1922), our Supreme Court stated that "an injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business." Article 8309, § 1 also provides that the statute does not include "an injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment." Appellant claims appellee's injury falls within this exception to the general rule.

Appellee testified that for several weeks before the altercation, he had been setting aside a plastic bag of meat scraps for one of the company's truck drivers. The day before the incident, Alexis Abarca, Campos' foreman, took the scraps away from appellee, and told him he could not give

them to the driver. The next day, the truck driver spoke angrily to Abarca, after which the foreman approached Campos and a fight ensued. Campos who was cleaning the slaughterhouse floor at the time, said Abarca tried to grab him by the neck. In response, Campos pulled back, and both he and Abarca fell to the ground.

Alexis Abarca testified that he decided to confront Campos after the truck driver who wanted the meat scraps became angry with Abarca. He stated that he came up to Campos, called him a liar, and made a threatening gesture with his hands in order to scare Campos. Campos grabbed Abarca, and they fell to the floor. Abarca also stated that his disagreement with Campos was strictly based on their employment relationship, and the manner in which Campos was doing his work.

Jose Luis Baldares, a witness to the incident, testified that he saw Abarca come up to Campos, jump on him, and knock him down. He stated that Abarca said nothing upon entering the room. He just yelled, and then fell on Campos.

■ We hold the evidence is sufficient to support the jury's finding that appellee was injured in the course of his employment. Where an employee is injured in a personal difficulty arising over the manner in which his work is being done, although the difficulty itself is not a part of the work of the employee, such injury is compensable under the act. *Phoenix Insurance Co. v. Bradley*, 415 S.W.2d 928 (Tex. Civ.App.—Texarkana 1967, no writ); *Texas Indemnity Ins. Co. v. Cheely*, 232 S.W.2d 124 (Tex.Civ.App.—Amarillo 1950, writ ref'd). We overrule points one and two.

In points three, four, and five, appellant challenges the legal and factual sufficiency of the evidence to support the jury's finding that appellee's injury on February 17, 1981, was a producing cause of his total incapacity.

Dr. Miguel Jocson, an orthopedic surgeon, testified that he examined appellee on February 27, 1981. At that time, appellee complained of pain in his rib cage caused by the fight with his foreman a week before. A week or so later, appellee called Dr. Jocson, complaining of pain in his chest and lower back. When the doctor examined him on March 16, his diagnosis showed the nerve root in appellee's lower back was irritated. After further testing, Dr. Jocson admitted Campos to Tidelands General Hospital for physical therapy. After two weeks, when appellee's condition had not improved significantly, Dr. Jocson performed a lumbar laminectomy on appellee.

Dr. Jocson, basing his opinion on "reasonable medical probability," stated that given all the facts, the injury on February 17, 1981, contributed partially, if not fully, to appellee's disability. He stated that Mr. Campos may have had some natural disc deterioration due to his age, and the trauma to his back aggravated the problem, if, in fact, it did not cause the problem. Dr. Jocson said that prior to the February 17, 1981, incident, appellee had no objective medical findings of injury that disabled him. He also said appellee's post-traumatic arthritis and symptoms could reasonably be dated back primarily to February 17, 1981; and perhaps, in part, due to an accumulation of several prior minor injuries. He said he felt that appellee's *permanent disability* could be set at the February, 1981 injury.

Dr. Baltzar Benavides testified that he examined Mr. Campos on February 17, 1981, after the altercation, and he found appellee's injuries to be limited to his chest area. He stated that he found no evidence of any trauma to Campos' back which would have resulted in permanent disability.

■ It is within the exclusive province of the jury to resolve conflicts in testimony presented at trial. It is also within the province of the jury to judge the credibility of the witnesses and the weight to be given their testimony, and to resolve conflicts and inconsistencies in the testimony of different witnesses. *Tenngasco Gas Gathering Co. v. Fischer*, 624 S.W.2d 301 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.

e.); *Jim Walter Homes, Inc. v. Castillo,* 616 S.W.2d 630 (Tex.Civ.App.—Corpus Christi 1981, no writ). We believe this rule holds equally true of expert medical testimony. We hold the evidence of producing cause is both legally and factually sufficient. We overrule points three, four, and five.

In points six, seven, and eight, appellant contends there was no evidence to support the submission of a special issue on permanent incapacity, and insufficient evidence to support the jury's finding that appellee's incapacity was permanent. We disagree.

Appellant argues that appellee's "continuous work record following complete medical discharge" is overwhelming evidence of appellee's ability to obtain and retain employment. Therefore, a finding of total and permanent incapacity is against the great weight and preponderance of the evidence.

It is well settled that the fact that an injured employee resumes work and earns money after his injury does not preclude a jury finding of total and permanent disability. It is merely one fact to be considered in determining capacity to work. *American Home Assurance Co. v. Coronado,* 628 S.W.2d 818 (Tex.App.—Amarillo 1981, no writ); *International Insurance Co. v. Tarres,* 576 S.W.2d 862 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.); *Texas Employers' Ins. Ass'n v. Armstrong,* 572 S.W.2d 565 (Tex.Civ.App.—Eastland 1978, no writ). Our courts have also consistently held that the duration and extent of disability is, at best, an estimate which must be determined by a jury from all the facts before it. *Coronado,* 628 S.W.2d at 822.

Appellee returned to work in October of 1981, approximately seven months after he was hospitalized, and worked continuously from October 1981, until April 1982. He returned to Dr. Jocson in January and March of 1982, complaining of "acheness [sic] and stiffness" in his back. In April, appellee was treated by Jocson after he strained his lower back while moving some heavy rolls of paper. He missed four days of work at that time. He saw Dr. Jocson again on June 3, 1982, complaining of back pain. Dr. Jocson suggested that he wear his corset to prevent another restrain to his back. At all times during his treatment, Dr. Jocson recommended that he restrict his lifting "within the limits of his discomfort." Appellee requested a full medical release from Dr. Jocson in June 1982, in order to comply with his company's policy. Dr. Jocson testified that in June he signed a medical "release" for appellee, but that it was done under duress, because appellee needed such release to return to work. Freedman Packing clearly would not allow Campos to return to his job otherwise. Dr. Jocson testified, however, that appellee's back "was no longer 100 percent normal and he would need to exercise diligent care in avoiding re-injury". He also said that releasing appellee unconditionally was against his better medical judgment. Freedman Packing, in fact, would not accept the "release" presented by appellee. Appellee was unable to find other employment.

Having reviewed and considered the evidence, we conclude the trial court did not err in submitting a special issue on permanent incapacity, and the jury's finding was not against the great weight and preponderance of the evidence. We overrule points six, seven and eight.

In points nine and ten, appellant contends there is no evidence, or insufficient evidence, to support the jury's award of $7,797.40 for reasonable medical care. We disagree.

Dr. Jocson testified that, with one exception, the charges on appellee's hospital bill were (1) usual and customary charges for like or similar services in the community, and (2) the services were necessary in the treatment of appellee for the injury he sustained. *See Aetna Casualty & Surety Co. v. Jennusa,* 469 S.W.2d 423 (Tex.Civ.App.—Beaumont 1971, no writ); TEX.REV.CIV.STAT.ANN. art. 8306, § 7 (Vernon Supp.1982–1983). Dr. Jocson marked a $10.00 charge for a sigmoidoscopy tray which was not used in treating

appellee's back. This charge was deducted from the amount due. We overrule appellant's points nine and ten.

In points eleven and twelve, appellant claims the jury's answers to Special Issues Nos. 8 and 12 are against the great weight and preponderance of the evidence.

In answer to special issues, the jury found that (1) appellee's injury of July 11, 1980, had not contributed to his total incapacity, and (2) appellee's injury on April 27, 1982, had not contributed to his incapacity.

■ Dr. Jocson testified that appellee had no clinical signs of serious injuries that would be disabling to appellee prior to February 17, 1981. He was of the opinion that the injury on February 17, 1981, was a new injury and not an aggravation of the injury incurred in July 1980. He stated that appellee's injury on April 27, 1982, was probably a combination of an aggravation of the February 17 injury, and a new injury. He testified repeatedly, however, that appellee's disability stemmed from the February 1981 time period. We do not find that the jury's findings are so against the great weight and preponderance of the evidence as to be manifestly wrong. We overrule points eleven and twelve.

■ Appellee contends by cross-point that this appeal has been taken for delay, and without sufficient cause; therefore, a penalty should be assessed. TEX.R.CIV.P. 435, 438. While we agree with appellee that appellant's points of error present few issues of merit, we cannot say that the appeal is of such little merit to warrant the imposition of a penalty. We overrule appellee's cross-point.

The judgment of the trial court is affirmed.