**Frank B. AIKEN, Appellant,**

**v.**

**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.**

**No. 11–87–016–CV.**

Court of Appeals of Texas, Eastland.

Sept. 17, 1987.

Rehearing Denied Oct. 15, 1987.

Allen Glenn, Abilene, for appellant.

David R. Cobb and R. Matt Lair, McMahon, Smart, Surovik, Suttle, Buhrmann & Cobb, Abilene, for appellee.

OPINION

ARNOT, Justice.

Texas Employers' Insurance Association (TEIA) sued Frank B. Aiken, contesting the award of workers' compensation payments made to Aiken by the Industrial Accident

Board of the State of Texas. Aiken filed a counterclaim, seeking a judgment for total and permanent incapacity compensation benefits of $182.00 per week for a duration of 401 weeks. The jury found that Aiken suffered temporary, total incapacity for a period of 35½ weeks; temporary, partial incapacity for 4 weeks; and a reduction of earning capacity during such partial incapacity of $162.00 per week. The trial court rendered judgment in accordance with the jury's verdict. Aiken appeals. We reverse and remand.

The cause of Aiken's injuries was not disputed. On March 21, 1983, Aiken and his employer, R.O. McCarty, were "burning off" an oil field slush pit. The fire burned for awhile and then went out. Aiken walked over to some storage tanks and filled a five gallon can with a mixture of diesel and drip gasoline. He also filled a one gallon jug solely with drip gasoline. Aiken then carried the five gallon can and one gallon jug back to the slush pit. As he carried the diesel-drip gasoline mixture, it sloshed onto his clothing. When Aiken returned to the smoldering slush pit, he set the five gallon can down and threw the one gallon jug across the pit to relight the fire. As he did so, the one gallon jug of drip gasoline exploded and ignited his clothes, causing second and third degree burns to his legs and arms.

Aiken was hospitalized for over a month. He then stayed five additional weeks in a motel close to the hospital so that his wife could help tend to his burn sores. Altogether, Aiken missed eight months from work while he recuperated from his injuries. He received $182.00 per week for each week that he was off work.

Aiken subsequently went back to work part-time for a month and then full-time thereafter. When he returned to work, Aiken earned $6.75 per hour, the same wage he received before the accident. Aiken's employer, R.O. McCarty, subsequently sold his company to Nueve Operating Company of Texas, which in turn sold the company to Petranol of America. Petranol and Aiken entered into an employment contract whereby Aiken was paid $30,000.00

per year, as an independent contractor, to pump oil wells on Petranol's leases. The contract also required Aiken to purchase a truck and maintain automobile liability insurance coverage on such vehicle. At the time of trial, this employment contract was in effect.

In Points of Error Nos. 1 and 2, Aiken argues that the jury's finding that he suffered no incapacity after December 12, 1983, [the date he returned to work], is against the great weight and preponderance of the evidence. In deciding these points of error, we are required to consider and weigh all the evidence in the case and to set aside the verdict and remand the cause for a new trial if we conclude that the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Company*, 715 S.W.2d 629, 635 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If these points are sustained, we are required by the recent holding in *Pool v. Ford Motor Company*, supra, to "reveal our mental processes" so the Supreme Court can be certain that the requirements of *In re King's Estate*, supra, have been followed. See *Lofton v. Texas Brine Corporation*, 720 S.W.2d 804, 805 (Tex.1986); *Alm v. Aluminum Company of America*, 717 S.W.2d 588 (Tex. 1986).

The uncontroverted medical testimony presented by Aiken at trial reveals that he suffered third degree burns on 38 percent of his body and second degree burns on 7 percent of his body. Including donor sites for grafts, Aiken suffered injury to 70 percent of the skin on his body. A videotape of appellant undressing was introduced into evidence and viewed by this Court. The tape revealed the extent of the burns. As a result of the burns, his skin has less feeling and is dryer than normal, creating problems with skin healing. Specifically, Aiken's sweat glands are damaged to such an extent that he has an intolerance to heat, making him more prone to heat exhaustion and heat stroke.

The burns have reduced his lung capacity to approximately 50 percent. This condi-

tion was described as a permanent restrictive pulmonary disease which is the inability to get air in and out of the lungs. The disease is the result of scarring caused by burns, fumes, or toxin. The doctor described this injury as resulting in a total capacity of less than one lung because, in a loss of one lung, the other one can over compensate. Further, appellant has suffered varicose veins from the accident, necessitating the use of body stockings to prevent blood from pooling in his lower extremities. Aiken is also deaf in the high frequency range of 2000 to 4000 range. While this hearing loss is not debilitating, it is not readily correctable.

Prior to his injury, Aiken also performed roustabout and well pulling jobs in addition to his job as a pumper. He testified that his health has generally deteriorated since the accident. He cannot depend on his legs. When he gets up in the morning, his legs will not support his weight. After he has walked awhile his legs get better. However, his legs tire easily and have no strength, and his ankles swell. A co-worker testified that Aiken would stumble and fall tailing pipe. He cannot fully squat or stoop because of a lack of flexion in the knee area. While operating a brake or clutch on a pulling rig, Aiken's legs tire easily, necessitating frequently alternating his legs. Aiken can no longer physically break out sucker rods with a wrench. His skin is irritated by the sun and by particles which get under his support hosiery. After the accident, appellant would work an hour, then have to rest 15 to 20 minutes because he would get too hot. Dr. Clyde Morgan testified that as a result of his injuries, Aiken cannot perform the usual tasks of a workman and has suffered a loss in earning capacity.

In response, TEIA introduced evidence showing that: (1) Aiken had worked continuously since his return to employment eight months after the accident occurred; (2) Aiken had satisfactorily performed all job functions since the accident, including running a pulling unit and climbing stairs to gauge tank batteries; and (3) Aiken is currently earning at least $500 more per month than he was before the accident, although Aiken must now pay certain expenses out of that amount and is no longer covered by workers' compensation insurance.

TEIA introduced their treating physician's report which showed that Aiken was considered ready to return to work a full eight-hour day with no restrictions. Aiken explained that he had begged the physician for the release because of his economic situation. This physician did not testify.

Although TEIA introduced evidence that Aiken had satisfactorily performed his job, there was evidence that heavy lifting and jobs demanding exertion took him much longer than normal.

■ The purpose of workers' compensation is to compensate injured individuals for their loss of "earning capacity." *Barnett v. Aetna Life Insurance Company*, 723 S.W.2d 663, 667 (Tex.1987); *Bennight v. Western Auto Supply Company*, 670 S.W.2d 373, 379 (Tex.App.—Austin 1984, writ ref'd n.r.e.); *St. Paul Insurance Company v. McPeak*, 641 S.W.2d 284, 286 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Workers' compensation was not designed to compensate an employee for his lost earnings or for the injury itself. *Barnett v. Aetna Life Insurance Company*, supra at 667; *St. Paul Insurance Company v. McPeak*, supra at 286.

■ The fact that an injured employee returns to work and makes money after his injury is not a bar to recovery for total and permanent disability. *Navarette v. Temple Independent School District*, 706 S.W.2d 308, 310 (Tex.1986); *Texas Employers' Insurance Association v. Armstrong*, 572 S.W.2d 565 (Tex.Civ.App.—Eastland 1978, no writ); *Texas State Highway Department v. Kinsler*, 230 S.W.2d 364, 367 (Tex. Civ.App.—Beaumont 1950, writ ref'd). An employee's return to work, however, is evidence to be considered by the jury in making a disability determination. *Navarette v. Temple Independent School District*, supra at 310; *Trinity Universal Insurance Company v. Scott*, 342 S.W.2d 348, 349–50 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n.r.e.). Proof of duration and

extent of disability resulting from an injury must be determined by a jury from all the pertinent facts. *Navarette v. Temple Independent School District,* supra at 310.

After considering and weighing all the evidence in the case, we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. Aiken's injury is graphically displayed by the videotape and photographs. Aiken's left arm appears mutilated by the scarring. Pink and purple worm-like contractures lace his arm, preventing a full range of motion. A dermatome edge extends from his arm pit to his waist line. The back of Aiken's legs have the appearance of melted and charred cellophane. Large spider-like scar tissue at the back of the knee joint prevents full range of motion. Blue varicose veins, the size of an average finger, bulge from the back of the thighs to the knee joints. The front of Aiken's knees are also discolored. His feet and calves appear blue; only his smaller toes have a normal color. As a result of these injuries, Aiken cannot perform the usual tasks of a workman. He cannot stoop or squat. He cannot lift heavy objects. He cannot work for more than short periods of time without fatigue. He stumbles and falls. He cannot hear directions when surrounded by machine noise. He is prone to heat exhaustion.

The fact that Aiken earned as much or more after the accident, as he did before the accident, is specifically tied to his unique personal knowledge of a specific oil field and lease. Aiken cannot read or write. Other than the specific job for which he has been hired, his employability and earning capacity are greatly reduced.

We hold that the jury's verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. Points of Error Nos. 1 and 2 are sustained.

The judgment of the trial court is reversed, and the cause is remanded.