**INA OF TEXAS, now Cigna Insurance Company of Texas, Appellant,**

**v.**

**Jose Orlando TORRES, Appellee.**

**No. 01–90–00571–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 25, 1991.

Carla Bennett, Cheryl Barber, Houston, for appellant.

D. Lynn Bradshaw, John B. Wallace, Russell L. Cook, Jr., and Greg Morrison, Houston, for appellee.

Before SAM BASS, DUNN and HUGHES, JJ.

## OPINION

SAM BASS, Justice.

On January 31, 1986, Jose Orlando Torres (Torres) was working on a truck owned by Ramirez in the yard of Overland Express Company (Overland). Overland is a transportation trucking company whose drivers all are independent contractors. According to Torres, Mark Lancaster (Lancaster) who, with his wife Debbie, was the owner of Overland, was looking for a truck to use at a new truck stop opened by Overland, and he had asked Torres and Ramirez to get the truck prepared for that purpose. Torres and Ramirez were repairing a compressor on the truck when a spark ignited some gasoline on Ramirez' sleeve. Ramirez panicked and knocked over a can of dirty fuel which spilled on Torres. Torres suffered third degree burns over 40% of his body. INA, the workers' compensation carrier for Overland, denied coverage.

INA appeals from the jury's award of damages in favor of Torres. After finding that Torres was an employee of Overland, the jury awarded him damages in the amount of $119,177.36 plus future medical and hospital expenses, attorney's fees, and expenses. The trial court overruled INA's motions to disregard certain jury findings, for judgment notwithstanding the verdict, for entry of a take-nothing judgment, for a

new trial, and entered judgment on the verdict.

INA contends on appeal that the evidence was insufficient to support the jury's finding that Torres was an employee of Overland; that the trial court erred in failing to submit an issue on whether Torres was injured in the course and scope of his employment; that the jury's finding that partial incapacity began on May 5, 1987, was not supported by legally or factually sufficient evidence; that there was no evidence or insufficient evidence to support the jury's finding that Torres had an average daily earning capacity of $29.20 during his partial incapacity; and that the admission of Torres' physician's testimony concerning Torres' need for future surgery was reversible error.

We affirm the trial court's judgment.

■ INA complains in point of error one that the evidence was factually insufficient to support the jury's finding that Torres was an employee of Overland. A challenge to the factual sufficiency of the evidence requires us to consider and weigh all the evidence presented. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Shell Pipeline Corp. v. Coastal States Trading, Inc.,* 788 S.W.2d 837, 844 (Tex.App.—Houston [1st Dist] 1990, writ denied).

■ Both parties agree that the supreme test for determining whether one is an employee or an independent contractor is the existence of the *right to control the details* of that person's work. *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 590 (Tex.1964). While INA contends that Overland did not exercise control over the details of Torres' work, Torres points out that the issue is not whether Overland *did control* the details of his work but only whether it *had the right to control* those details. *Id.* However, where no contract between the parties establishes the status of the worker or the employer's right to control his work, an employee-employer relationship may be established circumstantially by evidence of actual exercise of control. *Anchor Casualty Co. v. Hartsfield,* 390 S.W.2d 469, 471 (Tex.1965).

■ Generally, the courts consider five evidentiary factors in analyzing one party's right to control the details of another's work: (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except as to final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by the unit of time or by the job. *Pitchfork Land and Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 603 (1961); *Eagle Trucking Co. v. Texas Bitulithic Co.,* 590 S.W.2d 200, 211 (Tex.Civ.App.—Tyler 1979), *aff'd in part and rev'd in part on other grounds,* 612 S.W.2d 503 (Tex.1981); *William Sommerville & Son, Inc. v. Carter,* 571 S.W.2d 953, 956 (Tex.Civ.App.—Tyler 1978) *aff'd,* 584 S.W.2d 274 (Tex.1979). If, after considering these factors, there is conflicting evidence as to the status of the worker, the issue should be submitted to the jury. *Living, Inc. v. Redinger,* 667 S.W.2d 846, 856 (Tex.App.—Houston [1st Dist.] 1984), *rev'd on other grounds,* 689 S.W.2d 415 (Tex.1985); *Eagle Trucking,* 590 S.W.2d at 212. The jury heard extensive conflicting evidence on the relationship between Torres and Overland.

INA took the position that Torres was an independent contractor who performed tire repair services for Overland but was free to conduct his own business as well. He kept his own hours and worked independently of any restrictions other than "general control" by Overland. According to INA, there were other independent tire repair services that, like Torres, also did tire repair for Overland. INA sought to minimize any distinctions in the relationship Overland had with these other services and the relationship it had with Torres.

Torres owned his own truck and compressor and paid his own expenses. However, Overland supplied all his hand tools, tubes, patches, and tires. INA contended that Torres was not required to be present at the job eight hours a day and was free to work for other customers. However, Torres testified that Lancaster told him to

report to Overland's dispatcher at about 7:30 every morning for instructions regarding what needed to be done. For at least 210 days during the year preceeding his injury, Torres arrived at the yard each day at about 7:30 a.m. If he did not arrive on time, someone at Overland would telephone or page him to inquire about his absence. He worked until at least 5:00. Debbie testified that she considered Torres to be "on call" 24 hours a day. If "stragglers" came in after 5:00 and Torres was already gone, "he would have to come back" if there was a flat to be fixed. She also testified that Torres could leave Overland's premises during the day because he had a pager where they could reach him.

Torres testified that he did not work for anyone else during the week when he was on "Overland Express' time" unless directed to do so by Lancaster. He worked on the trucks owned by the independent contractors who drove for Overland and the trucks that were owned by Overland without distinction. The Lancasters stated that Torres also worked many Saturdays and Sundays at Overland, although he occasionally did tire repair for other people on the weekends. While insisting that Torres was free to turn down Overland's work, Debbie also said that, had he done so, she would not have called him back to fix any more flats.

While INA suggested that Torres performed only tire repair services, Torres presented evidence that he did many other jobs for Overland at the direction of its owners and was paid for these services. He testified that frequently he handled containers, operated a fork lift, loaded and unloaded tractor trailers, and stocked and managed Overland's inventory of parts. All parts that he ordered were paid for by Overland. He picked up and delivered parts and packages for Lancaster, sometimes using one of Overland's trucks. No independent tire service repairmen were asked to do these jobs.

INA stressed the fact that Overland did not pay Torres on an hourly basis. Instead, Torres billed Overland per job by invoice. In answers to interrogatories,

INA claimed that Overland had paid no money to Torres and that no authorized payment schedule was ever established between them. INA also stated, as support for its conclusion that Torres was not an employee of Overland, that Torres was never hired or paid by Overland, and that on the date of the accident he was working on his personal vehicle. Torres indicated that he filled out invoices because the Lancasters required him to document all the work done on each job for the independent contractor truck drivers. Torres listed on the invoices the prices of the services and parts supplied. Torres thought the prices he charged were set by Overland, but Debbie testified that Overland had nothing to do with setting the prices which were standard in the industry. Overland paid Torres weekly for the jobs he had done and then deducted the amount of the invoice from the truckers' pay. Debbie testified that they did so to protect Torres from being cheated by the independent contractor truckers who used his services. However, she also admitted that Overland followed the same procedure with outside tire repair services in order to offer credit terms to the drivers, not to protect them. Torres pointed out that, also unlike any of the outside tire repairmen, he could request, and would receive, advances on his salary from Debbie. None of the other tire repairmen were given salary advances.

Overland did not provide Torres with certain "employee benefits" or deduct taxes from Torres' pay, and his 1099 form indicated that he was paid "nonemployee compensation." Torres contended that this designation is not determinative of his legal status. *See Pan American Ins. Co. v. Stokes*, 370 S.W.2d 955 (Tex.Civ.App.— Amarillo 1963, writ dism'd). Lancaster admitted that it was more expensive for Overland to classify a worker as an employee rather than an independent contractor because Overland paid medical insurance, contributed to a profit-sharing plan, provided workers' compensation coverage, and matched FICA deductions for employees. Torres stressed the inference, drawn from this information, that Overland's decision not to provide him employee benefits did

not accurately reflect his true employment status but was made simply in order to save money.

Debbie testified that Overland made no profit from the work Torres did for the independent contractor truckers. Nor did his tire repair work benefit Overland financially in any way. Her husband agreed, however, that Torres' tire repair services were very important to Overland's business and that it benefitted Overland to have him on the premises every day.

As evidence that Overland did, in fact, have and exercise the right to control the *details* of his work, Torres testified that each day he was told which tires to repair and in which order. He was also told which tires to "hold off" on. He was often told when he was doing a job incorrectly. Overland had the right to and did order changes in Torres' work. Torres was told how to replace tires on a truck. Several times, he had to take off tires which he had replaced and put them back on in the order that Lancaster wanted. In contrast, Debbie testified that when the independent contractor truckers sometimes called other tire repair services to come to Overland's yard for tire repair, Overland exercised no similar control over their work.

Overland agreed that Torres was directed as to which tires needed repair and he could be corrected for mistakes. However, since Torres had learned to repair tires at the age of 13 while working with his father at Overland, it was not necessary that he be supervised. Overland also conceded that Torres could have been fired if he had not repaired the tires properly. In fact, Overland retained the absolute right to fire Torres at will according to both Torres and Lancaster. Overland contends, however, that this evidence indicates only general control over Torres' work which does not make an independent contractor an employee. *Living, Inc.*, 667 S.W.2d at 856; *Eagle Trucking Co.*, 590 S.W.2d at 213.

Both parties cite *Texas Employers Insurance Association v. Bewley*, 560 S.W.2d 147 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ), for their opposing positions regarding the employment status of Torres. A careful analysis of *Bewley* indicates that it supports the appellee in this case. Bewley was the owner of his own business which supplied heavy equipment and trained operators to construction companies. Lambert Construction Company entered into an oral contract that provided for Bewley to furnish a backhoe with a front-end loader for a construction job. Bewley was operating the backhoe when several beams fell on him, causing serious injury. A jury found for Bewley and awarded him damages.

At trial, Bewley stressed the facts that Lambert furnished his materials, set his hours, paid him by the hour, did not furnish him with plans or specifications, pointed out the jobs which he was to do, told him what to do and "directed" him in doing it. When he did grading work, the contour and grade lines were set by Lambert employees who directed the operator of the backhoe with hand signals.

Lambert stressed the fact that Bewley was admittedly involved in an independent business. He determined the compensation to be paid to him or his operator and he, not Lambert, paid the operator. Lambert paid Bewley in a lump sum, which included both the equipment rental and the worker's pay. Lambert did not undertake to tell Bewley how to handle his machine in order to achieve the expected result.

Upon reviewing the extensive evidence presented by Bewley and TEIA, the compensation carrier, this Court determined that contradictory reasonable conclusions could be reached from the facts established by the testimony. Bewley's version stressed the inference that he was an employee or borrowed employee of Lambert, while Lambert's version stressed the inference that Bewley was an independent contractor. Therefore, we concluded that the issue of Bewley's employment status was properly submitted to the jury. Furthermore, in light of the extensive evidence presented at trial, we found that the jury's finding, that Bewley was an employee of Lambert, was supported by the evidence.

Here, as in *Bewley*, the facts presented by both parties frequently did not conflict.

However, contradictory inferences and conclusions could be drawn from those facts. Therefore, the jury was properly asked to determine Torres' employment status.

The jury is sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). We may not substitute our opinion for that of the trier of fact. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951). Unless it is so against the overwhelming weight of the evidence as to be clearly wrong and unjust, the jury's verdict must be upheld. *Cain,* 709 S.W.2d at 175; *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). The inferences and conclusions drawn by the jury are supported by sufficient evidence and will not be disturbed on appeal. *Bewley,* 560 S.W.2d at 150.

INA's first point of error is overruled.

■ In its second point of error, INA complains that the omission of a jury question on whether Torres was injured in the course and scope of his employment constituted reversible error. Torres responds that the issue of course and scope was subsumed in the jury question on Torres' employment status.

The jury was asked, *"At the time of the injury of January 31, 1986,* was Jose Orlando Torres an employee of Overland Express Company or was he an independent contractor?" (Emphasis added.) "Employee" was defined as "a person in the service of another. . . ." Torres reasons that the jury's answer, "He was an employee," necessarily established that he was "in the service of Overland," i.e., in the course and scope of his employment, *at the time of the injury.* Torres also points out that INA's proof at trial was directed exclusively toward the defense that Torres was an independent contractor. He contends that since INA offered no evidence that Torres was *not* in the course and scope of his employment, no separate issue on that question was necessary or warranted. *George Pharis Chevrolet, Inc. v. Polk,* 661 S.W.2d 314, 317 (Tex.App.—Houston [1st Dist.] 1983, no writ); *see also City of Wich-*

*ita Falls v. Ramos,* 596 S.W.2d 654, 658 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.).

We find that INA has waived its right to complain in this regard. Although INA claims to have preserved its objection to the omission of the issue on course and scope of employment, we do not find this to be the case.

Objections to the charge must be distinct and specific. *Davis v. Campbell,* 572 S.W.2d 660, 663 (Tex.1978); TEX.R.CIV.P. 274. INA suggests that it "informed" the trial court of a need for a question on course and scope "before the charge went to the jury." However, a review of the record, including that portion specifically referred to by INA, indicates that the only mention by INA of such a question was made during a brief *pretrial* conference in the court's chambers. Present were the judge, Ms. Bradshaw, counsel for Torres, and Ms. Barber, counsel for INA. At that time, the following exchange occurred:

> The Court: Okay. All these stipulations are true so we can agree we don't need jury questions on these?
>
> Ms. Bradshaw: Exactly, nor evidence.
>
> The Court: You told me a while ago that you got an issue on course and scope. Is there any other matter that needs to be resolved by the jury? Any other facts?
>
> Ms. Barber: On whether or not he was an employee or independent contractor.
>
> The Court: That would kind of be part of course and scope, wouldn't it?
>
> Ms. Barber: Yes.

We do not find these comments cited by INA to constitute a clear or specific objection as contemplated by the rules. Neither were they timely, coming as they did prior to *voir dire* in the case. INA made no other "objection" to the omission of the issue at any time in the proceedings. Therefore, error in the omission of the issue, if any, was waived and the omitted issue, even if necessary to Torres' recovery, would be deemed found in support of the judgment. TEX.R.CIV.P. 279; TEX.R. APP.P. 52(a).

We overrule INA's second point of error.

■ In point of error three, INA challenges the legal and factual sufficiency of the evidence to support the jury's finding that Torres' partial incapacity began on May 5, 1987. The jury was instructed that a person cannot be totally and partially incapacitated at the same time. They were asked to find the beginning date of Torres' partial incapacity and, if such incapacity was temporary, to find the ending date. If they found the partial incapacity to be permanent, they were to so indicate by writing "permanent" in the space for the ending date. The jury found that Torres' partial incapacity began on May 5, 1987, and was permanent.

INA seems to base its no-evidence challenge to this finding on the fact that no one testified that May 5, 1987, was the exact date upon which the extent of Torres' incapacity changed from total to partial. However, both parties agree that the jury's determination of the duration and extent of any incapacity is at best an estimate that must be determined from all the pertinent evidence before it. *Reina v. General Accident Fire & Life Assurance Corp.*, 611 S.W.2d 415, 416 (Tex.1981); *Texas Employers Ins. Ass'n v. Campos*, 666 S.W.2d 286, 290 (Tex.App.—Houston [14th Dist.] 1984, no writ); *Transport Ins. Co. v. Garcia*, 580 S.W.2d 96, 98 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The fact that an employee has returned to work is only one factor in determining disability. *Transamerica Ins. Co. of Texas v. Hernandez*, 769 S.W.2d 608, 613 (Tex.App.— Corpus Christi 1989, writ denied); *Campos*, 666 S.W.2d at 290.

Torres testified in detail about the injury he suffered, his recovery process and partial rehabilitation, and the effect of the injury on his ability to seek and find employment. He was unemployed until July 31, 1987, approximately one and one-half years after the accident which occurred on January 31, 1986. Torres' doctor testified as to the time Torres was under his care and the extent of Torres' disability. He established that he last examined Torres on March 5, 1987. In addition, medical records further confirmed the process and extent of Torres' recovery. The evidence presented to the jury was sufficient to support their conclusion that Torres' partial incapacity began on May 5, 1987.

We overrule point of error three.

■ INA next contends that the evidence was legally and factually insufficient to support the jury's finding that Torres had an average daily earning capacity during his partial incapacity of $29.20.

Again, it appears that INA's argument of no evidence is based on the fact that, on the issue of Torres' future earning capacity, no one testified to the exact dollar amount found by the jury. However, the rule again is that a claimant's future ability to earn wages is not susceptible of exactitude. At best the answer must be the result of deduction from circumstances leading to a reasonable estimate. *Rowland v. Standard Fire Ins. Co.*, 489 S.W.2d 151, 155 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.); *Fidelity & Casualty Co. of New York v. Read*, 433 S.W.2d 797, 798 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.). If based upon the evidence, the jury's answer is reasonable, we may not substitute our opinion for that of the jury. *Spillers v. City of Houston*, 777 S.W.2d 181, 186 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

At trial, Torres testified that he was earning $25,000 per year in his current job. Appellant claims that Torres' was earning more post-accident than he was earning at the time of his injury. However, based upon his salary for the eight months preceding his injury, the evidence showed that Torres actually would have earned in the range of $25,000 per year had he not been injured.

■ A worker's capacity to earn wages is not the same as actual wages earned. *Spillers*, 777 S.W.2d at 185; *Travelers Ins. Co. v. Walkovak*, 390 S.W.2d 75, 79 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.). Therefore, even if the amount of Torres' salary after the accident were shown to be greater than his salary before his injury, the fact that he could return to work and earn more after his injury than he did before is not conclusive on the issue

of his earning capacity. *Navarette v. Temple Indep. School Dist.*, 706 S.W.2d 308, 310 (Tex.1986). This Court has recognized the rule in *Navrette:* If the worker's capacity and efficiency to work are not the same as before the injury, the worker is entitled to compensation, regardless of the fact that he continues to work and is paid as much as or more than he earned prior to or at the time of the injury. *Spillers*, 777 S.W.2d at 185; *Employers Reins. Corp. v. Ryne*, 531 S.W.2d 156, 160 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ).

In *Aiken v. Texas Employers' Ins. Ass'n*, 737 S.W.2d 143 (Tex.App.—Eastland 1987, no writ), the appellate court reversed a jury finding of no incapacity under circumstances similar to those in Torres' case. Although the worker's earnings had increased due to his unique knowledge of the specific job for which he had been hired, the evidence also showed that his employability and earning capacity in the general job market were greatly reduced because of his injury. *Aiken*, 737 S.W.2d at 146.

Torres testified that he had great difficulty finding work after his injury. Because of the burns, his skin cannot tolerate exposure to heat or sun. His extensive scarring causes his skin to crack and break open when he exceeds his very restricted range of motion. Therefore, he can no longer work outside or do physical labor. Approximately one and one-half years after his injury, Torres went to work for his uncle as a truck driver in a delivery service. However, he was unable to keep the delivery job because his skin and face blistered from the heat in the truck and the intermittent exposure to sunlight.

Through the delivery job, Torres met his current employer, Michael Minute, the owner of Move Solutions, a moving company. When Torres found that he could not drive the delivery truck, Minute offered Torres some training and an opportunity to work in the office of the moving business. Torres is currently employed by Move Solutions as operations manager.

Torres testified that Minute was a "real good friend and a fantastic teacher" who was "really good" to him. However,

Torres also expressed his fear that he would not be able to find similar employment if he were to lose his present job for any reason. Torres, who had an eighth-grade education at the time of his accident, now has a G.E.D. However, he has not been educated in the field he is working in, nor does he have other background or work experience in that field. He would be competing with people more experienced and educated than he.

We find that this evidence is sufficient to support the jury's finding that Torres suffered a diminished earning capacity under the definition as set out in *Transamerica Insurance Company of Texas v. Hernandez*, 769 S.W.2d at 613: "Partial incapacity occurs when injury disables a workman to perform part of the usual tasks of his job, though such disablement does not prevent him from procuring and retaining employment reasonably suitable to his physical condition and ability to work...."

Considering the evidence regarding Torres' physical limitations and his employability should he lose the job he now enjoys at Move Solutions, we find the jury's answer regarding the amount of Torres' earning capacity during partial incapacity, which corresponds to minimum wage, to be reasonable.

INA's fourth point of error is overruled.

■ In its fifth point of error, INA complains that the trial court committed reversible error by admitting the testimony of Dr. Parks, Torres' treating physician, concerning Torres' need for future surgery.

Dr. Parks testified by deposition that Torres would need surgery to release tight areas of scarring on his wrists, to correct the restricted airflow through his nostrils, and to remove a portion of the scars on his face. INA contends generally that evidence regarding future surgery is inadmissible in workers' compensation suits. However, INA relies on cases which do not apply in the circumstances of this case.

The cases cited by INA hold that when the compensation carrier denies liability and has not requested in proceedings be-

fore the Industrial Accident Board that the claimant submit to surgery, the **carrier** cannot introduce evidence to show what the possible beneficial effects of future surgery might be for the claimant. *See Truck Ins. Exchange v. Seelbach,* 161 Tex. 250, 339 S.W.2d 521, 524 (1960); *Maryland Am. Gen. Ins. Co. v. Leffingwell,* 478 S.W.2d 616, 622 (Tex.Civ.App.—Corpus Christi 1972, no writ). However, a **claimant** may introduce evidence of future medical needs to show the seriousness of his injuries. *Leffingwell,* 478 S.W.2d at 622; *Walkovak,* 390 S.W.2d at 77. The admission of the doctor's testimony for this purpose was, therefore, not error.

▮ We further note that INA's objection to Dr. Parks' testimony came too late to preserve error, had any occurred. INA objected to the doctor's testimony when the doctor's videotaped deposition was offered. However, prior to that time, Torres himself had testified without objection that he needed future surgery to correct the problems with his wrist and his nasal passages. The erroneous admission of testimony that is cumulative of other evidence in the record is ordinarily not reversible error. *See Gee v. Liberty Mutual Fire Ins. Co.,* 765 S.W.2d 394, 397 (Tex.1989); *McInnes v. Yamaha Motor Corp.,* 673 S.W.2d 185, 188 (Tex.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985).

We overrule appellant's fifth point of error.

We affirm the trial court's judgment.